**Ex parte Charles Francis HOGAN, Relator.**

No. 01–95–01187–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 29, 1996.

Terri T. Holder, Angleton, for Appellant.

Lloyd D. Stansberry, Alvin, for Appellees.

Before OLIVER–PARROTT, C.J., and WILSON and MIRABAL, JJ.

## OPINION

WILSON, Justice.

This is an original habeas corpus proceeding arising from a proceeding in the trial court to enforce a child support order. Relator, Charles Francis Hogan, requests this Court to discharge him from a contempt sentence rendered by the 300th District Court of Brazoria County. We ordered relator conditionally released on bond pending our determination of his petition.

### Factual Background

Relator and his ex-wife, real party in interest Candace Lynn (Hogan) Hurt, were divorced in 1991 by a decree that provided that relator was to pay child support of $700 per month, payable each month in two equal installments, due on the first and 15th day of the month. In May 1995, Hurt filed a motion to enforce child support, asserting relator failed to make child support payments for

the periods September 15, 1994, to December 15, 1994, and January 15, 1995, to May 15, 1995.

On September 26, 1995, the trial court heard the motion. Relator testified his child support payments were current through November 1, 1994, after which he began to miss his payments. Hurt testified that she received no direct payments from relator for any of the due dates in 1995. The Brazoria County Child Support Office computer printout shows that between January 15, 1995, and May 15, 1995, relator made no child support payments, with the exception of a $48 payment on January 20 and a $100 payment on January 25. The trial court orally found from the bench that relator failed to make child support payments when due on January 1, 1995; February 1, 1995; February 15, 1995; March 1, 1995; March 15, 1995; April 1, 1995; April 15, 1995; May 1, 1995; and May 15, 1995. However, the order of contempt that the court signed the next day, September 27, 1995, stated that relator was found in contempt for not paying child support on January 1, 1994; February 1, 1994; February 15, 1994; March 1, 1994; March 15, 1994; March 15, 1994; April 1, 1994; April 15, 1994; May 1, 1994; and May 15, 1994.

For each of these nine instances of contempt, the court sentenced relator to 90 days confinement, to run concurrently, and for each instance suspended the sentence for a period of 60 days, conditioned on certain specified terms and conditions.

The day of the hearing, a writ of commitment was issued by the district clerk's office and relator was placed in jail. Our order conditionally releasing relator was issued October 3, 1995.

Hurt discovered the errors in the order of contempt concerning the dates of the contempts and on October 5, 1995, filed a motion to correct it. The motion bears a certificate of service evidencing Hurt's service of the motion on relator's counsel. After notice and hearing, on October 9, 1995, the court signed an order changing the dates on which it found the occurrence of contempt to have happened from the stated 1994 dates to: January 1, 1995, February 1, 1995, February 15, 1995; March 1, 1995; March 15, 1995; April 1, 1995; April 15, 1995; May 1, 1995; and May 15, 1995.

## Standard of Review

■ For this Court to order relator's release, the trial court's order of commitment must be void, either because it was beyond the power of the court to change it or because it deprived the relator of his liberty without due process of law. *Ex parte Barnett*, 600 S.W.2d 252, 254 (Tex.1980).

## First Ground For Relief/Supplemental Contention "A"

Relator's first ground for relief is that the order of contempt does not match the allegations set out in the motion to enforce.

■ Hurt responds to this contention by saying that the trial court corrected the dates in its October 9, 1995, order. Relator counters this in contention "A" of his supplemental brief, saying that once this Court assumed jurisdiction of the proceedings, the trial court lost jurisdiction to correct the dates. For support relator relies on *Ex parte Barnett*, 600 S.W.2d 252 (Tex.1980), and *Ex parte Morgan*, 886 S.W.2d 829 (Tex. App.—Amarillo 1994, orig. proceeding). In those two cases, the trial courts had committed the contemnors to jail solely on the strength of a commitment order, without the benefit of an attached contempt judgment detailing the court order they had violated and the particulars of when and how they had violated it. In both cases, the trial courts, after an unreasonable length of time had passed since the contemnor's confinement, then tried to remedy the lack of a contempt judgment by filing one after the contemnor had applied to a higher court for a writ of habeas corpus. *See Ex parte Barnett*, 600 S.W.2d at 257 (held that when the supreme court released Mr. Barnett on bond, the trial court lost jurisdiction to sign a judgment of contempt); *Ex parte Morgan*, 886 S.W.2d at 831–32 (held that when the Amarillo Court of Appeals released Ms. Morgan on bond, the trial court lost jurisdiction to sign a judgment of contempt). We agree with the principle stated in *Barnett* and *Morgan* that when a trial court has not signed a

judgment of contempt and the alleged contemnor who has petitioned a higher court for habeas corpus relief has been released on bond, the trial court does not have jurisdiction to file a judgment of contempt. That principle is inapplicable to this case, however, because here the trial court had, within a day of relator's confinement, signed a contempt judgment setting out the particulars of relator's contemptuous violations of the divorce decree, albeit with obvious typographical errors concerning the year in which the contemptuous acts occurred. In accordance with *Barnett* and *Morgan,* once we had ordered relator released on bond, the trial court did not have jurisdiction to create, wholecloth, a previously nonexistent contempt judgment. It did, however, have jurisdiction to correct the obvious typographical errors, nunc pro tunc, to make the written judgment speak the truth of the judgment that the judge actually rendered verbally in court. Tex.R.Civ. P. 316; *see Ex parte Waldrep,* 783 S.W.2d 332, 334 (Tex.App.—Houston [14th Dist.] 1990, orig. proceeding).[1]

We overrule contention "A" of relator's supplemental brief.

■■■■ Under his first ground for relief, relator argues that notice was not served on him of charges that he did not make his child support payments in January through May of 1994. The findings of relator's non-payment for January 15, 1994, through May 15, 1994, in the September 27, 1995, judgment, were obviously typographical errors. Obvious typographical errors do not render a contempt order void. *Ex parte Williams,* 866 S.W.2d 751, 754 (Tex.App.—Houston [1st Dist.] 1993, orig. proceeding) (citing *Ex parte Benitez,* 590 S.W.2d 704, 707 (Tex.1979)). Relator had notice from Hurt's motion to enforce that he was being charged with not paying child support on January 15, 1995, through May 15, 1995. At the close of the hearing, the court orally pronounced that relator failed to pay child support during the period January

15, 1995 through May 15, 1995. In drafting the September 27th judgment, the trial court made a clerical mistake, which it was entitled to correct. *Ex parte Waldrep,* 783 S.W.2d at 334. A nunc pro tunc order is used by a court to make its records speak the truth by correcting the record at a later date to reflect what actually occurred at trial. *Ex parte Dickerson,* 702 S.W.2d 657, 658 (Tex. Crim.App.1986). The October 9th order simply made the written record reflect the truth of the actual findings the court had made at the hearing.

Accordingly, we overrule relator's first ground for relief.

### Supplemental Contention "B"

■■■■ Relator argues in contention "B" of his supplemental brief that the trial court erred in granting the motion to amend the September 27th order because the delay between the actual commitment and the signing of the order deprived him of due process. Specifically, relator argues that he was confined September 26, 1995, pursuant to the trial court's oral ruling and that the October 9th order was not signed sufficiently close in time to his confinement to satisfy due process.

Relator relies on *Ex parte Delcourt,* 888 S.W.2d 811 (Tex.1994). In that case, Mrs. Delcourt brought a motion for enforcement of a previously agreed-to temporary order. *Id.* at 812. On September 27, 1993, the day the motion was heard, the trial court issued an order finding Mr. Delcourt in contempt for failing to make auto note payments as set out in the agreed temporary order, and had him confined. *Ex parte Delcourt,* 868 S.W.2d 373, 374–75 (Tex.App.—Houston [1st Dist.] 1993, orig. proceeding). Following his filing of a petition for writ of habeas corpus, this Court released him on bond pending a determination of his petition. *Id.* at 374. While Mr. Delcourt was out on bond, based on the September 27th hearing, the trial

---

1. We are mindful of the supreme court's statement in *Ex parte Anderson,* 900 S.W.2d 333, 334 n. 1 (Tex.1995), that *Ex parte Delcourt,* 888 S.W.2d 811 (Tex.1994) prevented the trial court from changing or modifying a prior contempt judgment. *Anderson* is not applicable in this case, however, because here what is being changed are obvious typographical errors that are clerical mistakes and not, as in *Anderson,* judicial errors involving ambiguity in the trial court's contempt judgment that prevented Mr. Anderson from knowing what he needed to do to escape the restraint on his liberty.

court signed a second commitment order, this time finding him in contempt for transferring a piece of Mrs. Delcourt's property to his brother's house in violation of the agreed order. *Id.* When relator petitioned the supreme court on this matter, it held that if the second commitment order issued as a result of the first contempt hearing, no written commitment was signed sufficiently close to the time the judge pronounced the contempt to satisfy due process requirements. *Ex parte Delcourt,* 888 S.W.2d at 812 (citing *Ex parte Amaya,* 748 S.W.2d 224, 224–25 (Tex. 1988)). Relator argues that in *Delcourt,* the supreme court rejected the idea that the trial court could enter additional contempt judgments and commitments subsequent to the first. We agree. However, what the trial court did in this case was not to enter an additional contempt judgment, but correct the first one consistent with how the court had ruled verbally in court after the hearing.

Relator also relies on *Ex parte Amaya.* In that case, the trial court verbally delivered the commitment order on Friday October 2nd and formally signed it Monday, October 5th. The supreme court held that the trial court may cause a contemnor to be detained by the sheriff or other officer for a short and reasonable time while the judgment of contempt and order of commitment are being prepared for the judge's signature, but that a three-day delay was not a short and reasonable time to complete such a task. *Id.* at 225. The supreme court went on to say that to hold otherwise would allow the trial court to place a person in jail indefinitely without knowledge of why he was being held in contempt. *Id. Amaya* is not applicable to this case because the record reflects that relator knew why he was being held in contempt because the court told him so at the conclusion of the contempt hearing and the contempt judgment was signed within one day of the hearing. Relator could not have seriously thought that the stated dates of the contempt were anything but typographical errors for the following reasons: (1) Hurt's motion to enforce did not mention allegations that relator had not made child support payments for January 1, 1994, through May 15, 1994, but did allege that he had not made child support payments for January 1, 1995,

through May 15, 1995; (2) there was no evidence adduced at the September 26th hearing that relator had missed child support payments for January 1, 1994, through May 15, 1994, but testimonial evidence from relator and Hurt, as well as documentary evidence from the Brazoria County Child Support office, showed that relator had missed child support payments for January 1, 1995, through May 15, 1995; (3) at the conclusion of the hearing, the judge told relator he was holding him in contempt for failing to make child support payments for January 1, 1995, through May 15, 1995, and made no mention of finding him in contempt for failure to make payments in the period, January 1, 1994, through May 15, 1994; and (4) the dates set out in the September 27th contempt judgment are the same as the ones the judge mentioned, except the year shown is 1994 instead of 1995.

Further, there is nothing in the record to indicate that relator raised an objection with the trial court concerning the fact that it stated the dates of contempt in the September 27th judgment as being in 1994 instead of 1995. Hurt's October 5th motion to correct the September 27th order bears a certificate of service and order for hearing on the motion set for October 9th, indicating relator had notice of the motion and an opportunity to be heard by the court concerning the correction of the findings of the dates of the contemptuous acts. Relator, out on bond at the time, apparently did not contest the motion to correct the September 27th order, as he has not brought forward to this Court a response by him to the motion to correct or a statement of facts from the October 9th hearing.

In *Ex parte Anderson,* 900 S.W.2d 333 (Tex.1995), the trial court, subsequent to a November 10, 1994, contempt hearing, ordered Mr. Anderson confined until he "fully paid all arrearage." *Ex parte Anderson,* 893 S.W.2d 195, 196, 196 n. 1 (Tex.App.—El Paso 1995, orig. proceeding). The El Paso Court of Appeals held that the contempt judgment was defective because it was unclear to whom the arrearage should be paid and what the amount of the arrearage was; thus, it was not clear to Mr. Anderson what he was re-

quired to do to escape the restraint of his liberty. *Id.* The El Paso Court of Appeals held that the trial court could issue a new contempt judgment remedying those defects without holding a new contempt hearing. *Id.* at 197 n. 4. The trial court did so, on March 14, 1995, and Mr. Anderson filed a petition for writ of habeas corpus with the supreme court, complaining that the new judgment of contempt was not signed sufficiently close in time to the time the trial court found him in contempt to satisfy due process requirements. *Ex parte Anderson,* 900 S.W.2d at 334. The supreme court agreed, citing *Ex parte Delcourt. Id.* at 335.

This case is distinguishable from *Anderson.* Mr. Anderson was facing coercive contempt provisions without knowledge of what he had to do to purge himself of contempt. In this case, relator is faced with serving 30 days of unsuspended punitive contempt punishment. Relator knows the reason for that sentence because the motion to enforce gave him notice of the charged violations. Further, at the conclusion of a five-hour hearing, the court rendered judgment, thus informing him of his contemptuous violations, and the next day, a written contempt judgment was signed, albeit with obvious typographical, clerical errors as to the year in the dates of the violations. The errors were shortly corrected by nunc pro tunc.

We overrule relator's contention "B" in relator's supplemental brief.

## Second Ground For Relief

In his second ground for habeas corpus relief, relator asserts the September 27th order of contempt is void because the non-payments reflected in the order are not supported by the evidence.

■ This ground for relief is moot in light of the October 9th order that corrected the dates of the non-payments. Testimonial evidence from relator and Hurt and documentary evidence from the Brazoria County Child Support Office support the fact that relator did not make the required child support payments during the period of January 1, 1995, through May 15, 1995.

We overrule relator's second ground for relief.

## Third Ground For Relief

In his third ground for relief, relator asserts that the September 27th order is void because the arrearage amount determined by the court is not supported by the evidence.

■ Relator's complaint that there is no evidence to support the total arrearage amount of $13,800 is premature. We have found there is evidence in the record to support the nine counts of contempt, which form a valid basis for relator's confinement for 30 days on a punitive contempt basis. Relator has served eight days. He has 22 days left to serve to satisfy the punitive contempt portion of the contempt judgment. The $13,800 arrearage found by the court plays no role in relator's confinement for the 30–day period. The $13,800 arrearage amount could only play a role in illegal restraint of relator once he has served the 30–days punitive contempt punishment. Because that has not yet occurred, we dismiss this ground for relief as premature. *See Ex parte Occhipenti,* 796 S.W.2d 805, 810 (Tex. App.—Houston [1st Dist.] 1990, orig. proceeding) (where sentence for criminal contempt was valid, held premature to address the civil portion of the contempt order).

## Fourth Ground For Relief

In his fourth and final ground for relief, relator asserts that the commitment order is void because it fails to direct a ministerial officer to detain him or take him to jail.

■ A commitment order is the warrant, process, or order by which a court directs a ministerial officer to take custody of a person. *Ex parte Hernandez,* 827 S.W.2d 858 (Tex.1992). The order containing this directive need not take a particular form and may be a separate order issued by the court, an attachment, or order issued by the clerk at the court's direction, or included in the contempt judgment. *Id.*

■ Hurt has included in her response to relator's petition for writ of habeas corpus a certified copy of a document entitled, "Writ of Commitment." The document bears the name of a deputy district clerk, is addressed to any sheriff or constable within the State of

Texas, and directs such a ministerial officer to "take into your custody and commit to the Brazoria County jail the said CHARLES FRANCIS HOGAN...." We hold this document directs a ministerial person to take custody of relator in a form that substantially satisfies the definition of a writ of commitment.

We overrule relator's fourth ground for relief.

We deny relator's petition for writ of habeas corpus, and order relator remanded to the custody of the sheriff of Brazoria County to serve the remainder of his sentence in accordance with the contempt judgment of October 9, 1995.