**In re Avi Bart MARKOWITZ, Relator.**

No. 14–98–00780–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 4, 1998.

Margaret H. Kohn, Bryan, TX, Patrick C. Meece, Bryan, TX, for appellants.

Allen Segal, Bryan, TX, for appellees.

Panel consists of Justices MAURICE E. AMIDEI, HUDSON and FOWLER.

## OPINION

WANDA McKEE FOWLER, Justice.

This petition for writ of habeas corpus arises from a divorce suit. Relator, Avi Bart Markowitz, was found in contempt for violating certain temporary orders and sentenced to thirty days in jail and thereafter from "day-to-day" until he purged himself of contempt. Relator contends a seven-day delay between relator's confinement and the court's signature on a written contempt order violated his due process rights. We agree and grant the writ.

## I. BACKGROUND

Relator and the real party in interest, Bridget Mary Markowitz ("Bridget"), were divorced on December 18, 1997. In the agreed divorce decree, the court determined custody and visitation of the parties' two children, ordered relator to pay child support, and divided the marital estate. The decree also required that relator continue Bridget's employment as a secretary at his medical practice. On January 16, 1998, Bridget moved for a new trial claiming "the terms [of the divorce decree] and the manner in which [her] signature was obtained [were] unfair." After a hearing, a month later, the trial court granted a new trial. On April 17, 1998, following a hearing, the court signed temporary orders. In these orders, the court changed custody and visitation, reduced relator's child support payments by half and ordered him to pay spousal support and interim attorney's fees. The court also ordered relator to continue Bridget's employment at his medical practice at her regular bi-weekly salary.

In the two months that followed, relator failed to make the required payments un-

der the temporary orders. As a result, Bridget twice moved to enforce those orders by contempt. The court set a show cause hearing for July 6, 1998. On the day of the hearing, relator moved for a continuance. Relator also responded to the contempt motions and sought reconsideration of the court's temporary orders, claiming he was entitled to a reduction of his financial obligations based on Bridget's alleged failure to pay her share of the community debts.

On July 7, 1998, after a two-day hearing, the court *verbally* pronounced relator in contempt. He also signed a commitment order confining relator to the Brazos County Jail for "30 days and thereafter until purged of contempt." The order concludes with, "formal order to follow."

The next day, at relator's request, the court signed a modified commitment order granting relator work release for specified periods. The modified order is nearly identical to the prior order except that it lists the offense as "contempt of court for nonpayment of support, etc." On July 13, 1998, relator filed this petition for writ of habeas corpus, but did not request bond for his release.

On July 14, 1998, the court signed a contempt and commitment order. The following day, relator filed a motion for release on bond and we granted the writ of habeas corpus, releasing relator on bond pending determination of his petition.

## II. ANALYSIS

An original habeas corpus proceeding is a collateral attack on a contempt judgment. *Ex parte Rohleder,* 424 S.W.2d 891, 892 (Tex.1967). The purpose of a writ of habeas corpus is not to determine the guilt of the contemnor, but only to determine whether he was afforded due process of law or whether the order of contempt was void. *Ex parte Gordon,* 584 S.W.2d 686, 688 (Tex.1979). A court will issue a writ of habeas corpus if the order underly-

ing the contempt is void, *Ex parte Shaffer*, 649 S.W.2d 300, 302 (Tex.1983), or if the contempt order itself is void. *Gordon*, 584 S.W.2d at 688. An order is void if it is beyond the power of the court to enter it, or if it deprives the relator of liberty without due process of law. *Ex parte Barlow*, 899 S.W.2d 791, 794 (Tex.App.—Houston [14th Dist.] 1995, orig. proceeding).

■ To punish a person for constructive contempt, due process requires both (1) a written judgment of contempt and (2) a written order of commitment. *See Ex parte Strickland*, 723 S.W.2d 668, 669 (Tex.1987); *see also Ex parte Barnett*, 600 S.W.2d 252, 256 (Tex.1980). The two orders may be combined in the same document. *See Barnett*, 600 S.W.2d at 256; *Ex parte Bagwell*, 754 S.W.2d 490, 492 (Tex. App. Houston [14th Dist.] 1988, orig. proceeding).

■ As the facts reveal, the court entered both types of orders but not in the same order and not even on the same day. Instead, relator went to jail on July 7, 1998 with only a signed and written *commitment order*. The court did not sign a written contempt order until July 14, 1998. Where the court does not sign a contempt judgment coincidently with a commitment order, the commitment order must contain the elements of a contempt judgment; that is, "the order should clearly state in what respect the court's order has been violated." *See* TEX.FAM.CODE ANN. § 157.166 (Vernon 1996); *Ex Parte Alford*, 827 S.W.2d 72, 74 (Tex.App.—Houston [1st Dist.] 1992, orig. proceeding).

The July 7th and July 8th commitment orders alone cannot support relator's confinement because they fail to specifically set out the time, date and place of each occasion relator failed to comply with the temporary orders. *See Alford*, 827 S.W.2d at 74. In spite of this defect, Bridget contends there was no violation of due process because the trial court signed a written contempt order within seven days of relator's confinement. According to Bridget, seven days is not too long a gap between the time of commitment and the order of contempt.

■ The courts of this state have consistently held that a contemnor may be detained by the sheriff or other officer for a *short and reasonable time* while the judgment of contempt and order of commitment are prepared for the judge's signature. *Barnett*, 600 S.W.2d at 257 (emphasis added).[1] The purpose of the "short and reasonable time" requirement is to prevent the trial court from placing a person in jail indefinitely without any method of purging himself of the contempt and without knowledge of why he is being held in contempt. *See Ex parte Amaya*, 748 S.W.2d at 224, 225 (Tex.1988). Therefore, the Supreme Court has held that just a three-day delay in signing a commitment order is not a "short and reasonable time" and violates a contemnor's due process rights. *Ex parte Jordan*, 865 S.W.2d 459 (Tex.1993); *Ex parte Amaya*, 748 S.W.2d 224, 225 (Tex.1988).

Bridget contends both that this case is not as egregious as *Jordan* and *Amaya* where the relators were confined without

---

[1]. In *Barnett*, the court also held that the trial court may correct an error in a prior contempt or commitment order before jurisdiction attaches in a proper court by the granting of a writ of habeas corpus. 600 S.W.2d 257. In that case, the contempt judgment was signed some eighty days after the court signed the commitment order and after the trial court had lost its jurisdiction. Id. at 256–57. Thus, Bridget contends the time requirement for signing a written contempt in *Barnett* relates solely to jurisdiction. In other words, she contends the contempt judgment in *Barnett* would have been valid if the trial court had not lost its jurisdiction. We do not read *Barnett* that way. *Barnett* imposes two separate requirements for a valid contempt order: a time requirement that satisfies due process and a jurisdictional requirement that gives the court the authority to act. *See id* at 257. Here, there is no doubt the trial court had jurisdiction to sign the written contempt order on July 14th because it was the day before this court granted the writ and released relator on bond.

any written order. We disagree. One other court has granted a writ of habeas corpus when several days elapsed between the time of commitment with a commitment order and the signing of the contempt judgment. In *Ex parte Morgan*, 886 S.W.2d 829, 831–32 (Tex.App.—Amarillo 1994, orig. proceeding), the court held that a four-day delay between relator's confinement under a written commitment order and the signing of a contempt judgment violated relator's due process rights.[2] Here, like in *Morgan*, relator was confined for both criminal and civil contempt under a written commitment order that did not specify why relator was being held in contempt. *Id.* As a consequence, relator was confined for seven days without any written order specifying why he was being held in contempt. That seven-day delay violated relator's due process rights. *Id.* at 831–32.

As a final attempt to argue that the seven day hiatus between the commitment and the signing of the contempt order was not too long, Bridget relies on *Ex parte Hogan*, 916 S.W.2d 82 (Tex.App.—Houston [1st Dist.] 1996, orig. proceeding), where the trial judge made changes to the contempt order twelve days after the commitment. However, as the discussion below shows, the changes made in *Hogan* were typographical, making the new order akin to a judgment *nunc pro tunc*.

In *Hogan*, one day after it verbally ordered the relator to jail, the trial court signed a contempt judgment that contained typographical errors. 916 S.W.2d at 84. Twelve days later, the trial court corrected the mistakes in the judgment. *Id.*[3] Attacking the validity of his confinement, the relator claimed the orders did not satisfy due process because the second

contempt judgment was not signed sufficiently close in time to his confinement. *Id.* at 85. The court of appeals rejected this argument, holding that the relator knew why he was being held in contempt because the court told him why at the contempt hearing and then signed a contempt judgment the next day. *Id.* at 86. The court found that the corrections made to the second judgment thirteen days after relator's confinement were not substantive, but were clerical in nature. *Id.*

In contrast, here, while the trial court told relator at the hearing why he was being held in contempt, the court did not sign a contempt judgment the next day, but waited seven days after relator began his confinement to put it in writing. In short, *Hogan* is distinguishable.

Finally, Bridget maintains that relator's due process rights were not violated by the lack of a contempt order because relator (1) was confined for both civil and criminal contempt and (2) was not attacking the validity of the criminal contempt finding. According to Bridget, under the criminal contempt, relator would have to serve 30 days before he could be released, so it did not matter whether a written order was signed during the first 30 days. We disagree with this logic. Relator was absolutely entitled to a written commitment order and a written contempt order. *See* Tex.Fam.Code Ann. § 157.166 (Vernon 1996); *Ex parte Morgan*, 886 S.W.2d at 831–832. His due process rights were violated when he was jailed without these written orders. *Id.*

### CONCLUSION

In conclusion, based on the holdings of *Jordan*, *Amaya* and *Morgan*, we hold that

---

2. The Amarillo court of appeals also held the trial court was without jurisdiction to sign the contempt judgment after the court of appeals had already granted the writ of habeas corpus and released the relator on bond. *Id.* So, as previously noted, there are both time and jurisdictional requirements for a valid contempt judgment.

3. Although the trial court in *Hogan* corrected the judgment after the court of appeals had released the relator on bond, jurisdiction was not an issue. We note, however, that the court treated the corrected judgment as a judgment nunc pro tunc. 916 S.W.2d at 87; *see* Tex.R.Civ.P. 306a.

the seven-day delay in signing the written contempt order violated relator's due process rights. In light of this holding, we need not address relator's remaining arguments attacking the legality of his confinement. We grant relator's petition for writ of habeas corpus and order relator discharged from custody.