Opinion of May 15, 2003 Withdrawn









Opinion of May 15, 2003
Withdrawn.  Motion for Rehearing Overruled.  Petition for Writ of Habeas Corpus Denied and
Memorandum Opinion filed August 29, 2003.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00406-CV

____________

 

IN RE EARNEST UTLEY, Relator

 



 

ORIGINAL PROCEEDING

WRIT OF HABEAS CORPUS

 



 

M
E M O R A N D U M   O P I N I O N  
O N   R E H E A R I N G

On
April 11, 2003, relator filed a petition for writ of
habeas corpus, which this court denied on May 15, 2003.  Subsequently, relator
filed a motion for rehearing in which he contends this court erred in denying
his petition because of typographical errors in the commitment order.  We overrule relator=s
motion for rehearing and deny petition for writ of habeas corpus.








In
this original habeas corpus proceeding, relator seeks
relief from an order of commitment for violation of community supervision.  An original habeas corpus proceeding is a
collateral attack on a contempt judgment. 
Ex parte Rohleder,
424 S.W.2d 891, 892 (Tex. 1967); In re Markowitz, 25 S.W.3d 1,
2 (Tex. App.CHouston [14th Dist.]
1998, orig. proceeding).  The purpose of
a writ of habeas corpus is not to determine the guilt of the contemnor, but
only to determine whether he was afforded due process of law or if the order of
contempt is void.  Ex
parte Gordon, 584 S.W.2d
686, 688 (Tex. 1979).  A court
will issue a writ of habeas corpus if the order underlying the contempt is
void, Ex parte Shaffer, 649 S.W.2d 300, 302 (Tex. 1983), or if the contempt order is
void.  Gordon, 584
S.W.2d at 688.  An order is void if it is beyond the power of
the court to enter it, or if it deprives the relator
of liberty without due process of law.  Markowitz, 25 S.W.2d
at 3; Ex parte Barlow, 899 S.W.2d 791, 794 (Tex. App.CHouston [14th Dist.] 1995, orig. proceeding).  

On
November 20, 1998, the trial court issued a modified support order, and issued
an order holding relator in contempt for failing to
pay child support.  Relator
appeared at the hearing.  The court
ordered relator committed to the county jail for 180
days and day to day until he paid $3,000 in child support arrearage.  The court ordered relator
to appear on February 3, 1999 to begin commitment.  On August 26, 1999, the trial court issued an
order suspending commitment for sixty months, provided relator
made the payments specified in the order.

On
December 28, 2000, the attorney general filed a motion to revoke
probation.  On April 4th or 5th of 2001,
the trial court held a hearing at which relator was
present and confirmed the amount of arrearage. 
The trial court revoked community supervision and ordered relator committed to the county jail for 180 days and
thereafter until he paid $3,000 in arrearage. 
The order, signed April 17, 2001, mistakenly states that relator had been found in contempt on August 7, 1999.  The trial court also ordered relator to appear on December 5, 2001, to begin commitment.

On
December 5, 2001, the court held a hearing and, although the order states relator was notified of the hearing, he did not
appear.  The order mistakenly states that
relator was found in contempt on April 5, 2001, and
orders the clerk to issue a writ of commitment for the arrest of relator.  On July 23,
2002, the Walker County District Clerk issued a writ of commitment.  Relator was
arrested and placed in the county jail on January 23, 2003.








Relator contends he received no notice to
appear for a contempt hearing to be held either on April 4th, April 5th, or
December 5th and no contempt hearing was held on any of those dates.  Accordingly, because the December order
commanding issuance of a writ of commitment states that relator
was held in contempt on April 5th, relator claims he
received no notice and was denied due process.

Before
a court can punish, by contempt, an act not committed in its presence, due
process requires that the accused have full and complete notification of the
contemptuous act.  Ex
parte Carney, 903 S.W.2d
345, 346 (Tex. 1995).  To assure
such full and complete notification in the context of a motion to enforce a
child support order, the legislature has passed section 157.002(b) of the Texas
Family Code, which provides:

A motion for enforcement of child support:

 

(1)  must include the amount owed as provided in the order, the
amount paid, and the amount of arrearages;

 

(2)  if contempt is
requested, must include the portion of the order allegedly violated and, for
each date of alleged contempt, the amount due and the amount paid, if any;

 

(3)  may include as an attachment a copy of a record of child
support payments maintained by the Title IV D registry or a local registry.

 

Tex. Fam. Code ' 157.002(b).

 








To
determine whether relator had sufficient notice, we
must look to the motion to revoke filed by the attorney general.  This motion states that relator
was found in contempt on November 20, 1998, and placed on community supervision
on August 26, 1999.  These dates are
correct.  Thus, the motion to revoke gave
relator notice of the specific orders relator had violated. 
It is impossible to determine if relator was
served with this motion because his name and address are crossed out in the
certificate of service.  However, relator does not claim he was not served with the motion to
revoke.  Thus, relator
had notice of the orders of which he was alleged to be in violation and he knew
that the attorney general was seeking to revoke suspension of commitment.

Because
relator does not complain he did not receive the
motion to revoke suspension of commitment, and that motion gave notice of the
orders he had violated and why the court should revoke suspension of
commitment, relator had notice of the previous order
holding him in contempt, the payments he was required to make to maintain
suspension of commitment, and the payments he failed to make.

AAn obvious typographical or clerical
error does not void the commitment order if it can be determined with
sufficient clarity and certainty from the remainder of the order what the
alleged contumacious acts were and what the relator
must do to purge himself of the contempt.@ 
Ex parte Benitez, 590 S.W.2d 704, 707 (Tex. 1979) (holding that three-day variance
between actual date of contempt order and date stated in order remanding relator to jail did not render commitment order void
because contempt order was sufficiently described in motion to show cause and
commitment order to give relator notice).  Benitez supports upholding orders with
clerical errors if the relator had notice of the
actions for which he is being held in contempt and what actions the relator must take to purge the contempt.  See also Ex parte
Hall, 611 S.W.2d 459 (Tex. Civ.
App.CDallas
1980, orig, proceeding) (upholding commitment order
that found relator had contemptuously disobeyed
support order by failing to make payments from April 13, 1979 to January 10,
1979, because order made it clear it concerned payments accrued as of January
10, 1980, rather than 1979); Ex parte Aguilera,
768 S.W.2d 425 (Tex. App.CEl Paso 1989, orig. proceeding) (upholding contempt order that
found relator guilty of violations of the September
11, 1988 order, when date of order was September 7, 1988).








Relator complains that no contempt hearing
was held on April 4th or 5th or on December 5th.  This is true. 
The only contempt hearing was held in November 1998.  The April 4th or 5th order revoking
suspension of commitment and the December 5th commitment order state the wrong
dates for the contempt order.  However,
the April order advises relator of the November 20,
1998, support order, which required him to make payments of $230 per
month.  The order also sets out the total
arrearage.  Although the order states
that the court signed an order finding relator in
contempt and suspending commitment on August 7, 1999, the actual date of the
contempt order was November 20, 1998. 
The actual order suspending commitment was signed August 26, 1999.

Despite
the errors in the two orders, relator was afforded
due process because the actual contempt order reflects notice of the contumacious
acts, the punishment, and what relator must do to
purge the contempt.  See Benitez, 590 S.W.2d at
707.  The order suspending
commitment states what relator must do to avoid going
to jail.  Furthermore, relator attended the hearings.  Finally, the motion to revoke advises relator of the specific prior orders of which he is in
violation and of relator=s
violations.  Relator
attended the April hearing on the motion to revoke and the order revoking
suspension of commitment advises him of his violations, advises of his
punishment, and orders him committed to jail. 
Despite the typographical errors in the April and December orders, relator was afforded due process.

Relator=s
motion for rehearing is overruled and the petition for writ of habeas corpus is
denied.

 

PER CURIAM

 

 

 

Judgment rendered and Memorandum
Opinion filed August 29, 2003.

Panel consists of Justices Yates,
Hudson, and Frost.