NO. 07-06-0367-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MARCH 28, 2007
_____

BYRON DALE GREEN,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 242ND DISTRICT COURT OF HALE COUNTY;

NO. B16,818-0606; HON. ED SELF, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Byron Dale Green was convicted of aggravated assault with a deadly weapon.  In seeking to overturn the conviction, he complains that 1) the evidence was factually insufficient to sustain it, and 2) he received ineffective assistance of counsel.  We affirm the judgment.

*Issue 1 - Factual Sufficiency*

Based on written allegations made by his girlfriend Ruby, appellant was charged with assault by choking while using or exhibiting a knife.  However, Ruby recanted her accusations at trial.  She testified that although she and appellant argued, he did not 1) put

his hand over her mouth and try to suffocate her, 2) threaten to kill her or her children, or 3) threaten her with a knife. In contradiction to her written statement, she also denied that 1) she bit appellant on the arm despite the presence of teeth marks on it, 2) appellant forced his way into the house though he entered through the window, 3) appellant held a knife to her throat though a knife matching the description given by Ruby was discovered, and 4) appellant forced her to have sex. Instead, she purportedly called the police simply because the two had a fight and she was mad. Given this, appellant believes there is factually insufficient evidence to illustrate that he choked her as alleged in the indictment. We disagree.

The standard by which we review the issue is set forth in *Watson v. State,* 204 S.W.3d 404 (Tex. Crim. App. 2006). The parties are referred to that opinion.

Next, Ruby admitted having written in her statement to police that appellant had put his hands over her mouth thereby "suffocating" her. So too did she describe, in her written statement given to police, how appellant said that 1) he was "going to break [her] neck," 2) he was ". . . just going to finish it, and got up and got a knife," 3) he was going to ". . . start with you and then your two kids," and 4) he was ". . . not leaving the house with [her] alive because [she would] put him in prison." Additionally, Dana Wong, a nurse at Covenant Hospital in Plainview, testified that Ruby told her appellant had placed his hands over her mouth and his arm around her neck to choke her and that she had bitten appellant's arm.[1]

---

[1]At trial, Ruby testified she did not know who Nurse Wong was and did not remember saying that.

Though defense counsel objected to both Ruby's written statement and Wong's testimony as hearsay, the trial court overruled the complaint. Furthermore, appellant attacks neither ruling on appeal. Thus, that evidence may be considered for all purposes in assessing the sufficiency of the evidence. *See Barnum v. State,* 7 S.W.3d 782, 788 (Tex. App.–Amarillo 1999, pet. ref'd).

Moreover, we note that though the word choking was mentioned in the indictment and Ruby described appellant's actions as placing his hands over her mouth and "suffocating" her, the words "choke" and "suffocate" are synonyms at least for this case. WEBSTER'S NEW WORLD THESAURUS 64 (1987); R. SOULE, A DICTIONARY OF ENGLISH SYNONYMS 518 (1959). Both connote the obstruction of air passages resulting in an inability to breath, and the evidence indicates that appellant's conduct evinced effort to gain that result. Thus, Ruby's written description of being suffocated can reasonably be interpreted as equating effort by appellant to choke her. This coupled with Ruby's allusion to being suffocated, Wong's reiteration that Ruby said appellant "choked" her, the discovery of a knife as described by Ruby, the presence of teeth marks on appellant's arm, and her appearance as being "very scared" and "distraught" (not mad) when the police arrived, provide ample basis for the jury to conclude not only that appellant did choke her but also that her written statement held the truth. *See Chambers v. State,* 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (recognizing that the jury could disbelieve a witness' recantation)*; see also Fernandez v. State,* 805 S.W.2d 451, 456 (Tex. Crim. App. 1991) (holding the evidence legally sufficient even though the conviction was based on hearsay offered after the complainant's recantation); *accord Jackson v. State,* 110 S.W.3d 626, 631

3

(Tex. App.–Houston [1ˢᵗ Dist.] 2003, pet. ref'd) (holding that a conviction may rest on hearsay even though the victim recants). Finally, because that conclusion would neither be founded on weak evidence nor be overwhelmed by the other evidence, we overrule appellant's first issue.

*Issue 2 - Ineffective Assistance of Counsel*

Next, appellant claims his counsel was ineffective for failing to proffer a hearsay objection to the use of Ruby's written statement, request a limiting instruction regarding that evidence, and request a limiting instruction to the purported hearsay of Dana Wong. We overrule the issue.

Regarding Ruby's written statement, the record reflects that defense counsel uttered numerous objections, one of which was: "Judge, again I'm going to object to improper impeachment and *hearsay*." (Emphasis added). Given that he actually objected on the basis of hearsay, we cannot say that counsel was deficient because he supposedly did not.

We further note that when the police arrived at the abode after being called by Ruby, she appeared to be "distraught" and "very scared." That same day, the investigator who spoke with Ruby and took her statement described her as "nervous," "disheveled," "a little nervous," "a little shaky," and "scared" at the time. So, because it was given soon after the assault occurred and while Ruby continued to experience the emotional effects of the attack, the written statement (which Ruby tried to recant at trial) can reasonably be viewed as an excited utterance. *See* Tᴇx. R. Eᴠɪᴅ. 803(2) (defining an excited utterance as a statement relating to a startling event or condition made while the declarant was under the stress of the excitement caused by the event or condition); *Salley v. State*, 25 S.W.3d

4

878, 880-81 (Tex. App.–Houston [14ᵗʰ Dist.] 2000, no pet.) (holding that the statement, if made while still in the grip of emotion, excitement, fear or pain, is admissible even after an appreciable time had elapsed between the exciting event and the utterance). Being an excited utterance, it was admissible free of any limiting instruction despite its supposed hearsay nature. TEX. R. EVID. 803(2). This is of import because its content, especially that pertaining to appellant's attempt at suffocation, was redundant of Wong's comment about choking. The two terms being synonymous under the circumstances before us (as we concluded above), we cannot say that defense counsel's failure to request an instruction directing the jury to consider Wong's comments solely for impeachment purposes harmed appellant. In other words, the circumstances of record do not create a reasonable probability that but for the purported error the result would have differed. *See Bone v. State,* 77 S.W.3d 828, 833 (Tex. Crim. App. 2002) (so defining the prejudice needed to support a claim of ineffective assistance).

Having overruled each issue, we affirm the judgment of the trial court.


Brian Quinn
Chief Justice


Do not publish.

5