Opinion issued August 28, 2008




     










In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00901-CV




GEORGE HERNANDEZ, Appellant

V.

MARIA GUADALUPE LOPEZ (HERNANDEZ) AND 
THE OFFICE OF THE ATTORNEY GENERAL OF TEXAS, Appellees




On Appeal from the 311th District Court
Harris County, Texas
Trial Court Cause No. 1991-42738




DISSENTING OPINION

          I respectfully dissent. Appellant George Hernandez contends that the trial
court erred by granting the motion of appellee, the Office of the Attorney General of
Texas (“the OAG”), for judgment nunc pro tunc because the evidence is insufficient
to support the trial court’s implied finding that the agreed order contained a clerical
error. The majority agrees, and I disagree. I would affirm the judgment nunc pro
tunc in favor of the OAG.
          George appeals from a nunc pro tunc judgment signed on August 22, 2006,
correcting the date on which he was found to be in arrearage on child support
payments to December 31, 2003 from the date of December 31, 2004 recited in the
original judgment executed on January 28, 2004. 
          The January 28, 2004 judgment adopted as the judgment of the trial court a
family law master’s report dated January 21, 2004 approving the parties’ “Agreed
Order Enforcing Child Support Obligation” (“Agreed Order”). The master signed the
report following a child-support enforcement hearing in which the master heard
evidence of the terms of the Agreed Order and transcribed them in a written “Agreed
Order,” which appellant and appellees Maria Guadalupe Lopez (Hernandez) and the
OAG then initialed and the master signed. The Agreed Order stated, in relevant part,
“The Court FINDS and CONFIRMS that George Everardo Hernandez is in arrears
in the amount of $51,000.00 as of December 31st, 2004”—a date then eleven months
in the future—including “all unpaid child support and any balance owed on
previously confirmed arrearages or retroactive support judgments as of the specified
date.” (Bold emphasis added.). The trial court rendered judgment against George in
the amount of $51,000 on the basis of that finding and stated that “[t]he judgment for
this amount is a cumulative judgment.” The judgment also contained findings that
George failed to pay court-ordered child support on four specific dates in 2003.
          The OAG subsequently moved for judgment nunc pro tunc, contending that the
Agreed Order transcribed by the master, initialed by the parties, and signed by the
master on January 21, 2004, and signed and adopted as the judgment of the trial court
on January 28, 2004, did not reflect the agreement of the parties but contained a
clerical error, namely the finding that Hernandez was cumulatively in arrears as of
December 2004, rather than December 2003. At the nunc pro tunc hearing, held on
August 22, 2006, the OAG presented evidence in the form of Maria’s testimony that
the master heard the terms of the “Agreed Order” in open court and that the date of
December 31, 2004 was incorrectly entered in the written master’s report:
          Q.      Did you approach the judge with the Attorney General and your
ex?
          A.      I believe so, yes, sir.
          Q.      Okay. And did you-all recite your agreement into the record?
          A.      Yes, sir.
          Q.      And was it agreed upon and stipulated on the record that the
arrears as of December 31, 2003 were $51,000?
          A.      Yes, sir.
          Q.      Was there any testimony on the record—Was there any testimony
that the agreement was 2004?
          A.      No, sir.
George did not present contrary evidence. 

          At the close of the hearing, the trial court granted the OAG’s motion for
judgment nunc pro tunc, ordered that the confirmation date of the arrearage be
changed from December 31, 2004 to December 31, 2003, and wrote that finding into
the August 22, 2006 nunc pro tunc judgment. With respect to the January 28, 2004
judgment, the court commented, “I think it is permissible for the court to assume that
the underlying court would not enter a judgment it had no authority to enter.” I
construe the court’s comment as its determination that it had no authority to render
a judgment on January 28, 2004 that did not accurately reflect the terms of the
agreement presented to the master and that the error was, therefore, a clerical mistake
in the entry of the judgment and not a judicial error in the judgment rendered.

          “Rendition is the judicial act by which the court settles and declares the
decision of the law upon the matters at issue.” Comet Aluminum Co. v. Dibrell, 450
S.W.2d 56, 58 (Tex. 1970) (quoting Coleman v. Zapp, 105 Tex. 491, 151 S.W. 1040,
1041 (Tex. 1912)). An agreed judgment—such as the Agreed Order adopted by the
court in this case—is rendered “whenever the trial judge officially announces his
decision in open court . . . in his official capacity for his official guidance whether
orally or by written memorandum the sentence of law pronounced by him in any
cause.” Samples Exterminators v. Samples, 640 S.W.2d 873, 875 (Tex. 1982)
(quoting Comet Aluminum, 450 S.W.2d at 59 and holding that, after parties had
voiced their approval of settlement dictated in open court, “the trial court rendered
judgment by ordering them to sign and follow the agreement”); see also Patel v.
Eagle Pass Pediatric Health Clinic, Inc., 985 S.W.2d 249, 252 (Tex. App.—Corpus
Christi 1999, no pet.); accord Noorian v. McCandless, 37 S.W.3d 170, 173–74 (Tex.
App.—Houston [1st Dist.] 1991, writ denied) (agreeing with Samples, but finding
that settlement agreement was incomplete and was neither read into record nor
admitted as exhibit). 

          Because an associate judge of a family law court lacks the power to render
judgment, however, rendition occurs in a case heard before a master when the
referring court adopts the associate judge’s report or, if no report is generated, when
the court signs the final order. Stein v. Stein, 868 S.W.2d 902, 904 (Tex.
App.—Houston [14th Dist.] 1994, no writ). In this case, therefore, the trial court
rendered judgment by adopting the “sentence of law” in the Agreed Order recited to
the master by the parties in open court. See Samples, 640 S.W.2d at 875. 

          The purpose of a judgment nunc pro tunc is to make the written record of a
judgment accurately reflect the trial court’s decision and the relief ordered. See Hawk
v. E.K. Arledge, Inc., No. 05-01-01144-CV, 2002 WL 1225917, at *2 (Tex.
App.—Dallas June 6, 2002, pet. denied) (mem. op.). Thus, the nunc pro tunc rule
provides that “clerical mistakes in the record of any judgment may be corrected by
the judge in open court according to the truth or justice of the case after notice of the
motion therefor has been given to the parties interested in such judgment.” Tex. R.
Civ. P. 316. A clerical mistake is, by definition, “a mistake or omission in the final
written judgment that prevents it from accurately reflecting the judgment actually
rendered.” Hawk, 2002 WL 1225917, at *2. Thus, to support a judgment nunc pro
tunc, the judgment entered must differ from the judgment actually rendered, so that
the judgment nunc pro tunc serves only to ensure that the judgment rendered is
actually entered of record. Id.; see also America’s Favorite Chicken Co. v. Galvan,
897 S.W.2d 874, 879 (Tex. App.—San Antonio 1995, writ denied); Ex parte Hogan,
916 S.W.2d 82, 85 (Tex. App.—Houston [1st Dist.] 1996, no writ) (trial court had
jurisdiction to correct obvious typographical errors in dates of missed child support
payments in contempt order nunc pro tunc to make written judgment speak truth of
judgment that judge actually rendered verbally in court). 

          Whether an error in the judgment is clerical or judicial is a question of law.
Escobar v. Escobar, 711 S.W.2d 230, 232 (Tex. 1986). However, whether the court
pronounced judgment orally and what the terms of the pronouncement were are
matters of fact. Id. “The judicial or clerical question becomes a question of law only
after the trial court factually determines whether it previously rendered judgment and
the judgment’s contents.” Id. The appellate court may review the trial court’s factual
determinations regarding its rendition of judgment for legal and factual sufficiency
of the evidence. Id.

          Here, the trial court held a hearing on appellees’ Rule 316 motion for judgment
nunc pro tunc to ensure that the judgment entered accurately reflected the judgment
actually rendered. See Tex. R. Civ. P. 316. It heard testimony that, under the terms
of the Agreed Order stipulated to in open court before the master at the August 21,
2004 hearing, George was in arrears in the amount of $51,000.00 as of December 31,
2003, not, as incorrectly transcribed, 2004. This testimony was not disputed. The
court also had before it the January 28, 2004 judgment approving the Agreed Order,
which contained the handwritten finding that George’s cumulative arrearage was
$51,000 as of December 31, 2004. 

          I would hold that the evidence at the nunc pro tunc hearing was legally and
factually sufficient to support the trial court’s implied factual determination that the
confirmation date of arrearage recorded in its January 28, 2004 judgment did not
accurately reflect the terms of the Agreed Order recited in open court, that the
confirmation date of arrearage was incorrectly transcribed, and that George was
actually in arrears in the amount of $51,000 as of December 31, 2003—not December
31, 2004. Therefore, the written master’s report did not accurately reflect the court’s
“decision of the law upon the matters at issue.” Comet Aluminum, 450 S.W.2d at 58;
see also Escobar, 711 S.W.2d at 232 (whether error was clerical or judicial becomes
question of law only after trial court factually determines whether it previously
rendered judgment and judgment’s contents); see also BMC Software, 83 S.W.3d 789,
795 (Tex. 2002) (if trial court does not issue findings of fact and conclusions of law
“all facts necessary to support the judgment and supported by the evidence are
implied”).

          Because there is probative evidence to support the trial court’s determinations
that the judgment entered did not accurately reflect the judgment rendered, I would
hold that the sentence of law pronounced here by the court’s signature on the parties’
Agreed Order was that to which the parties testified, namely that George was in
arrears in the amount of $51,000 as of December 31, 2003, and that he should pay
arrearages from that time—and not from December 31, 2004, a date testified to by no
one, contrary to the testimony, the evidence, and logic, and appearing only in the
incorrect transcription in the handwritten master’s report. And I would further hold
that, in hearing and transcribing the terms of the Agreed Order in open court, the
family law master acted as the agent of the trial court in performing the judicial
function of hearing and transcribing the terms of the agreed judgment and that any
transcription error should be attributed to the court, not to the parties who correctly
recited the agreement to the master. Thus, I would hold that the trial court did not err
in correcting the arrearage confirmation date in its August 22, 2006 judgment nunc
pro tunc, and I would, therefore, affirm the August 22, 2006 nunc pro tunc judgment. 
See Escobar, 711 S.W.2d at 232 (affirming judgment nunc pro tunc when, at hearing
on motion for judgment nunc pro tunc, district court heard evidence of partial
judgment orally rendered by different presiding judge in complex proceedings that
differed from written judgment entered on all claims in case four years later and court
heard evidence of contents of oral partial judgment, and some record evidence
supported trial court’s decision to correct judgment).

          The majority, however, holds that because the rendition of judgment occurred
on January 28, 2004, when the trial court adopted the master’s report, and because all
errors in the rendition of judgment are judicial errors, not clerical errors, the trial
court erred in correcting the arrearage confirmation date in the January 28, 2004
judgment nunc pro tunc, and it vacates the nunc pro tunc judgment signed on August
22, 2006. The majority relies for support on Galvan, 897 S.W.2d 874, Roman
Catholic Diocese of Dallas v. County of Dallas Tax Collector, 228 S.W.3d 475, 479
(Tex. App.—Dallas 2007, no pet.), In re Fuselier, 56 S.W.3d 265, 268 (Tex.
App.—Houston [1st Dist.] 2001, orig. proceeding), and Stein, 868 S.W.2d 902. 

          In my view, the majority conflates rendition of judgment and entry of
judgment, and its holding is incompatible with the definition of rendition of judgment
as the “judicial act by which the court settles and declares the decision of the law
upon the matters at issue.” Comet Aluminum, 450 S.W.2d at 58; see also Samples,
640 S.W.2d at 875 (judgment rendered is “the sentence of law pronounced” by the
Court). Nor do I believe the cases cited by the majority support its interpretation of
the law. 

          The majority relies most heavily upon Galvan, which is distinguishable from
the case at hand. In Galvan, the plaintiff requested that the trial court grant her
motion for non-suit “with prejudice,” and, after the trial court had entered the
judgment and dismissed the suit, she requested correction of the judgment “nunc pro
tunc” to reflect dismissal “without prejudice,” claiming the request for a non-suit
“with prejudice” was a clerical error made by her counsel’s legal assistant. 897
S.W.2d at 876. There is no question, however, that a judicial ruling dismissing a suit
“with prejudice” in response to the prayer of a party is a “declar[ation of] the law
upon the matters at issue.” Therefore, I agree with Galvan, but I do not think its
ruling is applicable to this case, in which the error corrected was not a judicial ruling
but a transcription mistake.

          Likewise, in Roman Catholic Diocese, an agreed judgment was submitted to
the trial court pursuant to a compromise and settlement. 228 S.W.3d at 479. The
terms were set forth in the agreed judgment. Id. That judgment imposed ad valorem
tax liability on the Diocese for the years 1989 through 1991. Id. at 478, 479. 
Approximately nine months later, the parties submitted an agreed “nunc pro tunc”
judgment to the trial court that imposed an additional two years of tax liability on the
Diocese, and the trial court approved it. Id. at 479. The appellate court voided the
“nunc pro tunc” judgment, stating, “A substantive change in a judgment results from
the correction of a judicial error, not a clerical one.” Id. The court explained,
“Because the trial court approved the settlement by signing the agreed judgment, the
judge’s act of signing the judgment constituted his rendition of the judgment” and
“any error that may have been made in the drafting of the judgment became part of
the judgment the court rendered at the time the judgment was signed.” Id. In sum,
the original mistake was the parties’ own drafting mistake, and, by accepting their
statement of the substantive terms of the agreed judgment, the trial court rendered
judgment. It could not then go back at the parties’ request and, by signing a judgment
“nunc pro tunc,” change a mistake in the declaration of the substantive law into a
clerical mistake. 

          In In re Fuselier, as in Galvan, the court signed an order dismissing a non-suited case “with prejudice.” 56 S.W.3d at 266. The order was signed as “approved”
by counsel for the movant. Id. at 267. When the same plaintiff subsequently filed a
second suit on the same issue, her new counsel discovered the dismissal with
prejudice and sought entry of an order nunc pro tunc, contending the original order
was mistakenly submitted by the plaintiff’s former attorney. Id. The trial court
signed the order, but the appeals court vacated it on the ground that the original order
correctly reflected the judgment actually rendered. Id. at 267–68. Again, the mistake
that was sought to be corrected by judgment “nunc pro tunc” was a mistake in the
declaration of the substantive law, not a clerical mistake that the evidence showed
never to have been intended to be part of the agreed judgment.

          In Stein, the situation was somewhat different. There, the family law master
initialed a Final Decree of Divorce and Property Settlement Agreement drafted by
appellee’s counsel that was announced in open court and dictated into the record. 868
S.W.2d at 903. Thereafter, and before the trial court signed the judgment approving
the settlement agreement and entering the decree of divorce, the wife revoked her
consent to the agreed judgment. Id. The appellate court interpreted the central
question in the case to be the date of rendition of judgment, and it concluded that,
because an associate judge does not have statutory authority to render judgment,
rendition necessarily took place when the trial court approved the settlement
agreement and not when the associate judge initialed the agreed decree. Id. at
903–04. The court held that, because the wife revoked her consent to the agreed
judgment before the trial court signed it, the judgment was void. Id. at 904. But the
situation in that case is not analogous to this case, where there was no revocation of
consent to the terms of the agreed judgment recited to the master in open court, but
a mistake of transcription by the master that caused the master’s report to incorrectly
reflect the terms of the agreed judgment recited to the court in the hearing before him. 
Thus, I would hold that because there was evidence in the nunc pro tunc proceeding
from which the court could reasonably conclude that there was a mistake in the
transcription of the parties’ agreement that prevented the written judgment from
accurately reflecting the judgment actually rendered, the trial court did not err in
determining that the error in the judgment was clerical, and not judicial, and in
correcting it. See Hawk, 2002 WL 1225917, at *2.

          The problem with the majority’s holding in this case is that clerical errors in
the transcription of an agreed judgment recited before a master and transcribed by
him are automatically transformed into judicial errors in the rendition of judgment. 
Hence, there can never be a nunc pro tunc correction of a judgment rendered on the
basis of a master’s report to the court, no matter how absurd or obvious a mistake is
made in transcribing the terms of the agreement. I believe, therefore, that this ruling
has the effect of excepting agreed judgments entered on the basis of a master’s report
from the protection of Rule 316, providing for the nunc pro tunc correction of
judgments, and that it is inconsistent with the purpose of the nunc pro tunc rule and
with Comet Aluminum and Samples, which approve the correction of clerical errors
nunc pro tunc while distinguishing these errors from errors in the rendition of
judgment, which are not correctable nunc pro tunc. See Samples, 640 S.W.2d at 875;
Comet Aluminum, 450 S.W.2d at 58–59.

          I would overrule appellant’s sole issue.

Conclusion

          I would affirm the trial court’s judgment nunc pro tunc.









                                                             Evelyn V. Keyes

                                                             Justice

 
Panel consists of Chief Justice Radack and Justices Keyes and Higley.

Justice Keyes, dissenting.