Ex parte Cornelio **BALDERAS**, Relator.

No. 01–90–00035–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 31, 1991.

Robert Peltier, Houston, for appellant.

Elizabeth Asher, Houston, for appellee.

Before EVANS, C.J., and MIRABAL and DUGGAN, JJ.

## OPINION

DUGGAN, Justice.

This is an original habeas corpus proceeding. On June 6, 1989, the 311th District Court of Harris County adjudged relator, Cornelio Balderas, in contempt for failure to pay court-ordered child support in the amount of $200 per month. The court ordered relator confined to the Harris County jail for 10 days, and thereafter until he purged himself of the contempt by paying $3,000 in child support arrearage and $500 in attorney's fees. The court suspended the commitment to allow relator time to pay the required sums.

On October 2, 1989, the court conducted a compliance hearing. Relator testified at the hearing he was expecting a $14,000 distribution from a profit sharing account. Based on this information, the court reset the compliance hearing until December 20, 1989 and awarded an additional $500 in attorney's fees.

At the compliance hearing on December 20, 1989, the court found relator had received the $14,000 disbursement, but had not paid any of the $3,000 in child support arrearage, and had paid only $200 of the $1,000 attorney's fees. Relator testified that instead of paying the amounts as ordered, he purchased a new truck. He also testified he had told his sons he would rather go to jail than pay the money. The court found relator in contempt for (1) failure to pay the child support arrearage of $3,000, and, (2) failure to pay attorney's fees of $800. The trial court then ordered relator confined to the Harris County jail for 175 days for each finding of contempt, with the sentences to run consecutively.

This Court granted the writ of habeas corpus and set bond.

In his petition for writ of habeas corpus, relator asserts four points of error, complaining his confinement is illegal because: (1) the motion for contempt, show cause order, and commitment order do not give him full and complete notice of the dates of his alleged disobedience; (2) the divorce decree is not specific enough; (3) he was

denied a jury trial; and (4) the commitment subjects him to double jeopardy.

■ In his first point of error, relator complains he did not receive full and specific notice of the dates of the various alleged acts of disobedience because the motion for contempt, show cause order, and commitment order contain impossible dates of disobedience. Relator asserts that "a complaint which alleges [only] the last two numbers of a year [e.g., 87, or 88, or 89] is fatally defective for the reason that the date the offense is alleged to have been committed cannot be ascertained for [sic] a reading thereof." This exact issue was recently addressed and decided adversely to relator by this Court in *Ex parte Mulkey*, 776 S.W.2d 308, 310 (Tex. App.—Houston [1st Dist.] 1989, orig. proceeding).

Relator's first point of error is overruled.

■ Relying on *Ex parte Griffin*, 712 S.W.2d 214 (Tex.App.—San Antonio 1986, orig. proceeding), relator next complains the divorce decree is not specific enough because it does not order relator to pay child support to any specific person. We disagree. *Griffin* is distinguishable because, in that case, the divorce decree stated the child support payments were to be "made through the Juvenile Department, Child Support Division, Post Office Box 7546, San Antonio, Texas," but did not designate a managing conservator to receive such payments. The San Antonio court held that the judgment did not order relator to make child support payments to any specific person, and its order to make payments through the Child Support Division was insufficient. *Id.* at 215–16.

The divorce decree before us is more specific than the *Griffin* decree because it names the real party in interest, Louisa Balderas, as the managing conservator, and recites that all

> [p]ayments are to be made through the Harris County Probation Department, Child Support Division, 1115 Congress, Family Law Center, Houston, Texas 77002, and thereafter promptly remitted to the Managing Conservator.

We find the divorce decree informs relator what he must do in clear, specific, and unambiguous terms. *See Ex parte Conoly*, 732 S.W.2d 695, 697 (Tex.App.—Dallas 1987, orig. proceeding); *Ex parte Parrot*, 723 S.W.2d 342 (Tex.App.—Fort Worth 1987, orig. proceeding).

Relator's second point of error is overruled.

■ In his fourth point of error, relator complains his confinement is illegal because the trial court, after revoking the suspension of commitment, sentenced him to a greater term of confinement than the punishment that was probated, thereby subjecting him to double jeopardy. Contempt proceedings are quasi-criminal in nature, *Ex parte Cardwell*, 416 S.W.2d 382, 384 (Tex.1967), and "should conform as nearly as practicable to those in criminal cases." *Ex parte Sanchez*, 703 S.W.2d 955, 957 (Tex.1986); *Ex parte Scott*, 133 Tex. 1, 10, 123 S.W.2d 306, 311 (1939). Relator's complaint concerns a change in the assessed punishment for his contempt after its imposition was postponed to allow him to purge himself, and after he failed or refused to do the act required to purge himself. Relator's situation is closely analogous to that of a probationer under criminal law who has failed to meet restitution requirements of probation, and whose probation is revoked for that reason. The existing probation provisions of the Texas Code of Criminal Procedure provide that:

> if probation is revoked after a hearing under § 24 of this article, the court may proceed to dispose of the case *as if there had been no probation*, or if it determines that the best interests of society and the probationer would be served by a shorter term of imprisonment, reduce the term of imprisonment originally assessed to any term of imprisonment not less than the minimum prescribed for the offense of which the probationer was convicted.

Tex.Code Crim.P.Ann. art. 42.12 § 26(a) (Vernon 1985) (emphasis added). In conforming quasi-criminal contempt proceedings "as nearly as practicable to those in criminal cases," we interpret this statute to require, as an element of due process, that when a trial court assesses criminal punish-

ment for contempt, as was done here, probates the punishment in part, and thereafter revokes the probation, the court may then impose punishment no greater than was originally assessed. Such a restriction conforms the quasi-criminal contempt procedure "as nearly as practicable" to that of criminal cases.

The trial court had fully litigated the only contemptuous conduct for which relator has been charged when, at the conclusion of the hearing on June 6, 1989, it assessed relator's punishment at confinement in the Harris County jail for 10 days (criminal contempt), *"and thereafter until he purges himself of the contempt by payment of...."* (civil contempt). Any finding of contempt for conduct committed after the period covered by the June 6, 1989 hearing would require additional notice by pleading, and another hearing.

If the trial court had not suspended the commitment to allow relator time to pay the required sums—in effect, placing relator on probation until the date of the compliance hearing—relator would have been sentenced to confinement in the Harris County jail for 10 days, and thereafter until he purged himself of the contempt. Relator knew that if he did not comply with the court's previous order by the time of the reset date of the compliance hearing, he would serve 10 days in jail and thereafter until he purged himself of the contempt. The trial court did not act improperly when it postponed imposition of the assessed punishment until a definite future time in order to afford relator the opportunity to purge himself. Further, it properly conducted a compliance hearing at the conclusion of the period allowed for relator to comply. *Ex parte Sauser*, 554 S.W.2d 239, 241 (Tex.Civ.App.—Dallas 1977, orig. proceeding). However, the court erred in attempting to increase the punishment it had previously adjudicated. The purpose of the compliance hearing was to determine whether the punishment *previously determined* should be carried out as the judgment of the court, or be set aside if relator had purged himself. By imposing other punishment, the trial court undertook to readjudicate punishment it had previously assessed—and probated.

However, the court's error in increasing the punishment does not entitle relator to release. In a habeas corpus proceeding, which is a collateral attack on a contempt judgment, relator must show that the contempt order is void, not merely erroneous. *Ex parte Williams*, 704 S.W.2d 465, 468 (Tex.App.—Houston [1st Dist.] 1986, orig. proceeding); *Ex parte McKinley*, 578 S.W.2d 437 (Tex.Civ.App.—Houston [1st Dist.] 1979, orig. proceeding).

Accordingly, we reform the commitment order to reflect the punishment originally imposed: confinement to the Harris County jail for a period of 10 days, and thereafter until relator purges himself of the contempt by paying $3,000 in child support arrearage and $800 in attorney fees. *See Ex parte Williams*, 704 S.W.2d at 469. Relator's fourth point of error is overruled.

With the order of commitment reformed to reflect the proper term of commitment, relator's third point of error, urging that he was sentenced to a term greater than six months without a trial by jury, becomes moot.

As reformed, we uphold the contempt order and deny the relief requested. Relator is remanded to the sheriff of Harris County, Texas, for confinement in accordance with the trial court's order of commitment, as reformed by this Court.