Holden 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00007-CV







EX PARTE: MURRAY DANIEL HOLDEN, RELATOR







HABEAS CORPUS PROCEEDING FROM COMAL COUNTY








 By his original habeas corpus proceeding, relator Murray Daniel Holden
("Relator") seeks discharge from the custody of the Comal County sheriff. See Tex. Gov't
Code Ann. § 22.221(d) (West Supp. 1995); Tex. R. App. P. 120. Relator was confined
pursuant to a contempt order rendered by the district court of Comal County on October 19,
1993. Relator asserts that he was illegally confined because he did not receive notice or a
compliance hearing before his arrest and confinement and because bail was excessive and
unreasonable. We will order Relator discharged from custody.



BACKGROUND

 Relator and respondent Cathy Holden ("Respondent") were divorced on
February 11, 1983. The divorce decree required Relator to make child support payments of $250
per month for each minor child. On October 19, 1993, the Comal County district court found
Relator in contempt of court for failure to make child support payments in the amount of
$37,841.62. However, the court suspended Relator's commitment for contempt and placed him
on unsupervised probation "until all arrearages are paid," subject to certain terms and conditions. (1) 
The October 19, 1993 contempt order required Relator to appear for a compliance hearing on
October 19, 1994. There is no evidence in the record indicating that Relator or his attorney ever
received a written copy of this order. (2)

 The October 19, 1994 hearing was later reset for October 25, 1994. Respondent's
attorney sent notice of the rescheduled hearing date to Relator by certified mail return-receipt
requested, but the envelope was returned unopened and unclaimed. Relator claims that he did not
receive this letter because flooding had forced him and his family from their home and into a Red
Cross shelter and later into the homes of family and friends. In any event, he failed to appear at
the compliance hearing.

 The district court issued a capias for Relator's arrest and set a cash-only bond at
$40,000.00. Relator was arrested on December 30, 1994 in Montgomery County and transferred
on January 4, 1995 to the Comal County jail where he continued to be held in lieu of the cash-only bond. Relator never received a compliance hearing and filed a writ of habeas corpus with
this Court on January 10, 1995. On January 17, 1995, this Court granted Relator's application
for writ of habeas corpus and ordered him released upon posting of bond pending a hearing in this
Court.



DISCUSSION


 An application for writ of habeas corpus is a collateral attack on a trial court's
order of contempt and provides a mechanism for determining whether the relator has been
unlawfully imprisoned. Ex parte Tucci, 859 S.W.2d 1, 66 (Tex. 1993) (orig. proceeding). 
Relator has the burden to demonstrate that the contempt order was void, not merely erroneous. 
Ex parte Chunn, 881 S.W.2d 912, 916 (Tex. App.--Fort Worth 1994, orig. proceeding). A relator
may establish that the order was void by showing that it was beyond the power of the court to
issue the order or that he was deprived of his liberty without due process of law. Id. If the
contempt order is void, the confinement is illegal, and the relator must be discharged. Ex parte
Gordon, 584 S.W.2d 686, 688 (Tex. 1979) (orig. proceeding). In his first point of error, Relator
asserts that his confinement violated due process because he was given no notice of the compliance
hearing at which the court was to determine whether he had fulfilled the terms and conditions of
his probation. 

 It is uncontroverted that Relator was personally served and, thus, had proper notice
of the original contempt hearing on October 19, 1993 at which he was found in contempt of court. 
The court placed Relator on unsupervised probation and suspended his punishment so long as he
complied with certain conditions. A trial court has discretion to postpone "imposition of the
assessed punishment until a definite future time in order to afford relator the opportunity to purge
himself." Ex parte Balderas, 804 S.W.2d 261, 264 (Tex. App.--Houston [1st Dist.] 1991, orig.
proceeding). However, "an order finding a person in contempt but suspending punishment on
condition of compliance with the court's order provides no authority in itself for arrest and
confinement. A subsequent hearing to determine breach of the condition and a subsequent
unconditional commitment is necessary." Ex parte Hart, 520 S.W.2d 952, 953 (Tex. Civ.
App.--Dallas 1975, orig. proceeding). Thus, if a trial court elects to suspend punishment, it
relinquishes its authority to order the relator's arrest and confinement without notice and a
compliance hearing to determine if the relator has breached a condition of the probation. 

 In this case, the October 19, 1993 order, which held Relator in contempt and
suspended his punishment, required Relator to appear at a compliance hearing scheduled for
October 19, 1994. The October 19, 1993 order was not signed by Relator or his attorney, and
Relator claims that he received neither personal service nor written notice of the October 19, 1994
compliance hearing or the rescheduled October 25, 1994 hearing. He thus contends that the court
denied him due process of law in violation of section 14.317(b) of the Texas Family Code, which
requires that personal service be attempted when a party fails to appear at a compliance hearing
after mailed notice was sent. (3) 

 Respondent contends that Relator improperly relies on section 14.317 of the Texas
Family Code because that section applies only to enforcement hearings, not compliance hearings. 
Respondent asserts that after the court reset the compliance hearing, her attorney mailed notice
of the October 25, 1994 hearing to Relator's last known address by certified mail return-receipt
requested and that this was the only notice required. Respondent also claims that a notice of
setting was sent to Relator from the Comal County district clerk's office on September 28, 1994.

 Before a person is imprisoned for failure to comply with a contempt order, due
process of law requires that he be given notice and a hearing so that he may respond to the
allegations against him. Ex parte Bush, 619 S.W.2d 298, 299 (Tex. Civ. App.--Tyler 1981, orig.
proceeding); Hart, 520 S.W.2d at 953. While the arguments of Relator and Respondent address
the notice required by due process, we focus on the hearing prong of the due-process analysis. 
When Relator failed to appear at the October 25, 1994 compliance hearing, the trial court issued
a capias directing the sheriff or any peace officer of any county within the state of Texas "to take
the body of Murray Daniel Holden . . . and bring him before this court to answer the allegations
of the enforcement motion." Relator was arrested pursuant to the capias on December 30, 1994
in Montgomery County and was transferred to Comal County on January 4, 1995. He was not
given a compliance hearing and remained confined until January 17, when this Court granted his
writ of habeas corpus and released him on bond pending hearing before this Court. Respondent
concedes in her response to the application for writ of habeas corpus that the court did not hold
a compliance hearing on October 25, 1994 or at any other time. 

 In Ex parte Gonzales, 606 S.W.2d 5 (Tex. Civ. App.--Amarillo 1980, orig.
proceeding), relator's punishment was suspended on the condition of compliance with the
contempt order. In that case, the original contempt order provided that commitment papers would
automatically issue for Gonzales if he should fail to comply with the conditions set forth in the
order. The court concluded that the commitment order was void because "Mr. Gonzales'
punishment was suspended on condition of compliance and the court must afford him a subsequent
hearing to determine breach of the condition." Id. at 6. The court thus held that the district court
was not authorized to order the arrest and confinement of a relator without notice and hearing. 
Similarly, in Ex parte Crawford, 684 S.W.2d 124 (Tex. App.--Houston [14th Dist.] 1984, orig.
proceeding), relator was found in contempt for failure to pay child support on July 28, 1983, but
the contempt order was not put in writing and signed by the court until August 3, 1983. As in
the case at bar, enforcement of the contempt order in Crawford was suspended, and relator did
not appear at the compliance hearing as mandated by the original contempt order. Even though
the relator in Crawford knowingly evaded appearance before the court, he was brought before the
court for a compliance hearing on the day he was arrested. It was only after this hearing that the
court signed a commitment order.

 In our case, the court issued a capias on November 10, 1994 after Relator failed
to appear on the date set for the compliance hearing. The capias order signed by the trial court
directed the "sheriff or peace officer to take the body of MURRAY DANIEL HOLDEN . . . and
bring him before this Court to answer the allegations of the enforcement motion." However, as
Respondent concedes, Relator was never brought before the trial court for a compliance hearing. 
"The purpose of the compliance hearing [is] to determine whether the punishment previously
determined should be carried out as the judgment of the court, or be set aside if relator has purged
himself." Balderas, 804 S.W.2d at 264. Even if Relator had knowingly evaded appearance
before the court as was the case in Crawford, he was still entitled to a compliance hearing. 
Relator did not have the opportunity to respond to the allegation that he had failed to comply with
the conditions of the original contempt order, and he was thereby denied due process of law. See
Bush, 619 S.W.2d at 299. 

 Because the trial court deprived Relator of the hearing required by due process, it
is unnecessary to address Relator's other points of error. We hold that Relator cannot be deprived
of liberty without notice and a hearing. Consequently, the confinement is illegal, and Relator is
ordered discharged from the custody of the Comal County sheriff.



 

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Jones and Kidd

Relator Ordered Discharged

Filed: March 29, 1995

Do Not Publish

1.   The court ordered Relator to pay an additional $100.00 per month from November
1, 1993 until April 1, 1994. Beginning on May 1, 1994, Relator was ordered to pay an
additional $200.00 per month continuing until he "paid the full child support arrearage,
including prejudgment interest, of $37,841.62, and post-judgment interest that accrues."
2. However, in his application for writ of habeas corpus and for emergency relief, Relator
concedes that at the October 19, 1993 contempt hearing, he was ordered to appear on October
19, 1994 to determine his compliance with the terms and conditions of his unsupervised
probation. 
3. Section 14.317(b) of the Texas Family Code states:

 

(b) Personal Service Unsuccessful After Order to Provide Mailing Address. 
The court shall issue a capias for the arrest of a party if:


 (1) the party is allegedly in arrears in court-ordered child support
payments;


 (2) the party has been ordered under Section 11.155 of this code to
provide the clerk of the court with the party's current mailing
address;


 (3) the party did not appear at the hearing; and 


 (4) subsequently an attempt to serve notice of the hearing by personal
service on the party has been unsuccessful despite diligent efforts
to serve process at the latest address on file with the clerk and at
any other address known to the moving party at which the
respondent may be served. 


Tex. Fam. Code Ann. §14.317(b) (West Supp. 1995).