**In re Peter Robert SCARIATI, Jr., Relator.**

No. 07–98–0317–CV.

Court of Appeals of Texas, Amarillo.

Dec. 28, 1998.

Jamie S. Vandivere, Amarillo, for appellant.

James D. Durham, Amarillo, for appellee.

Before DODSON, QUINN and REAVIS, JJ.

***Original Proceeding***

QUINN, Justice.

Pending before the court is a petition for habeas corpus filed by Peter Robert Scariati, Jr. (Scariati). He asks that we grant the same and discharge him from the purportedly illegal confinement and restraint to which he is subject. We garner from the record before us that he was ordered confined in the Potter County jail by the judge of the 320th Judicial District Court. The reason for his confinement was his failure to comply with the directives of a prior divorce decree. That is, the court found him in contempt for failing to: 1) pay monthly child support, 2) maintain health insurance for his children or reimburse his ex-wife (Deborah Lynn Durham) for the cost of insuring the children via her group health plan, and 3) reimburse his ex-wife for his *pro rata* share of the medical expenses she incurred and paid on behalf of the children. For each act of contempt, Scariati was assessed a period of six months confinement, and the periods were to run concurrently. In addition, the court also ordered that he remain confined until he pays various sums for past child support, court costs, attorney's fees, uninsured medical expenses, and health insurance expenses.

Scariati presents four issues for our consideration. The first and second concern the specificity of the motion to enforce filed by Durham (Motion) and the subsequent order of contempt entered by the court (Order), respectively. The third involves whether the Order impermissibly denies him the chance of earning good time credit. The last deals with the allegation that he was unconstitutionally confined for the failure to pay his debts. Only the third issue is ripe for consideration, as will be discussed below. After considering that point, we reject it, deny the application in part, and dismiss the remainder without prejudice.

*1. Denial of Good Time*

■ We first address Scariati's third ground. Therein, he attacks the six month

sentence as impermissibly denying him any good time credit which the Potter County Sheriff may offer. We reject the contention.

■ While statute permits a county sheriff to adopt a policy affording good time credit to those in the county jail, TEX.CODE CRIM. PROC.ANN. art. 42.032 § 2 (Vernon Supp. 1998), nothing of record indicates that the Potter County Sheriff has done so. Nevertheless, if such a policy existed, the trial court could not have interfered with its application by sentencing Scariati for criminal contempt in a way that deprived him of its benefits. *Ex parte Roosth*, 881 S.W.2d 300, 301 (Tex.1994); *Kopeski v. Martin*, 629 S.W.2d 743, 745 (Tex.Crim.App.1982); *see Ex parte Acly*, 711 S.W.2d 627, 628 (Tex.1986) (recognizing that good time credit does not apply to coercive civil contempt orders). For instance, the court could not expressly state in its order that he should be denied good time credit. *Ex parte Roosth*, 881 S.W.2d at 301. Nor, could it order that he remain incarcerated for a period of time beginning and ending on certain specified dates. *Kopeski v. Martin*, 629 S.W.2d at 745. Yet, that is not what occurred here. Rather, the court ordered that Scariati be "confine[d] in the county jail … for a period of six months." Nothing was said about good time credit. Furthermore, the court did not demarcate the beginning and ending of the sentence via particular dates. Indeed, it did nothing more than what the Court of Criminal Appeals in *Kopeski* said could be done.

In *Kopeski*, the trial judge ordered that Kopeski be "confined … for 21 days, with credit allowed for jail time previously served; sentence to be served from 1/4/82 *until 1/25/82*." *Kopeski v. Martin*, 629 S.W.2d at 745 (emphasis in original). This sentence ran afoul of the judge's duty to eschew interfering with the application of good time credit, according to the Court of Criminal Appeals. Yet, the latter continued by informing the trial judge that he "may comply with this duty by pronouncing an amended sentence which omits the words 'until 1/25/82.' " *Id.* By redacting the language mentioned, the court implicitly held that a judgment simply

ordering Kopeski to be confined for 21 days, beginning on the January 4, 1982, did not interfere with his potential entitlement to good time credit. In other words, merely declaring that the individual is to be confined for a specified period, such as 21 days or six months, is proper. And that is all the trial court did here. It merely ordered Scariati to be confined for six months. Thus, the Order at bar violates neither *Kopeski* nor *Roosth*, nor the principles discussed therein.

### 2. Application Partially Premature

■ Next, we turn to the remaining issues in the petition. In doing so, we deem it important to recite and heed the applicable standard of review. Authority discussing that standard informs us that a petition for habeas relief is a collateral attack upon an order of contempt. *Ex parte Sentell*, 153 Tex. 252, 266 S.W.2d 365, 366 (Tex.1954); *Ex parte Barlow*, 899 S.W.2d 791, 794 (Tex. App.—Houston [14th Dist.] 1995, orig. proceeding); *Ex parte Hightower*, 877 S.W.2d 17, 20 (Tex.App.—Dallas 1994, orig. proceeding). So too do they illustrate that the order or judgment in question is presumed valid until the relator establishes otherwise. *Ex parte Occhipenti*, 796 S.W.2d 805, 809 (Tex. App.—Houston [1st Dist.] 1990, orig. proceeding). Thus, the burden lies with him to prove his entitlement to relief, *Ex parte Barlow*, 899 S.W.2d at 794; *Ex parte Hightower*, 877 S.W.2d at 20; *Ex parte Occhipenti*, 796 S.W.2d at 809; *see Ex parte Sentell*, 266 S.W.2d at 370 (holding that the burden was on the applicant to prove that the evidence did not support the court's finding of contempt), which in turn, obligates him to establish that the order is void, not merely voidable. *Ex parte Barlow*, 899 S.W.2d at 794; *Ex parte Hightower*, 877 S.W.2d at 20. Until that burden is carried, the order remains presumptively valid.

■ Here, Scariati did not carry his burden. This is so, because he did not address one of the three distinct grounds upon which he was found in criminal contempt and assessed six months imprisonment.[1] Indeed,

---

1. Two forms of contempt exist, civil and criminal. The purpose of the former is to secure or

coerce one's compliance with an order or decision of the court. *Ex parte Rogers,* 633 S.W.2d

all but one of the allegations in his petition touch upon those aspects of the Motion and Order which deal with the payment of child support, payment of attorney's fees, reimbursement of uninsured medical expenses, and reimbursement of the cost of health insurance. The remaining allegation pertains to the purported denial of good time credit. Nowhere, does he attack: 1) the finding that he failed to maintain health insurance for his children as per the prior order of the court, 2) the conclusion that his omission was contemptuous, or 3) the determination to imprison him for six months for committing this particular contemptuous act.

▉▉▉ To the extent that Scariati did not question that part of the Order punishing him for his failure to maintain health insurance, he did not carry his burden of proof. Thus, the portion of the Order he did not attack remains enforceable. *See Ex parte Arnold*, 926 S.W.2d 622, 624 (Tex.App.—Beaumont 1996, orig. proceeding) (holding that where a trial court itemizes each instance of contempt and assesses individual punishments for each instance, only the invalid portion of the order is void and the remainder is enforceable). This being so, we are relieved of having to decide whether the court erred in holding him in criminal contempt for not paying child support or reim-

bursing Mrs. Durham. Whatever decision we could render with regard to those issues would have no affect upon his term of imprisonment, since each carried a sentence of six months and each was to run concurrently with the others.

▉▉▉ Furthermore, are we relieved from having to address whether the court erred in ordering Scariati to remain in jail after the expiration of the six month term and until he pays the arrearages, costs of court, attorney's fees, and the like. This is so, because the contempt there involved is civil. That is, the court attempted to coerce obedience to a prior order by ordering that he be jailed until he complies with the order. *Ex parte Rogers*, 633 S.W.2d 666, 669 (Tex. App.—Amarillo 1982, orig. proceeding). Authority prohibits us from considering questions concerning the propriety of being imprisoned for civil contempt until the sentence levied for committing criminal contempt expires.[2] *Ex parte Hogan*, 916 S.W.2d 82, 87 (Tex.App.—Houston [1st Dist.] 1996, orig. proceeding); *Ex parte Brown*, 875 S.W.2d 756, 761 (Tex.App.—Fort Worth 1994, orig. proceeding); *Ex parte Occhipenti*, 796 S.W.2d at 810. Thus, since Scariati's imprisonment for criminal contempt has yet to expire, we may not determine at this time his allegations regarding civil contempt. *Id.*

---

666, 669 (Tex.App.—Amarillo 1982, orig. proceeding). For example, if one is placed in jail until he performs an act that he was previously ordered to perform, then the resulting contempt is civil in nature. *See Ex parte Raymer*, 644 S.W.2d 889, 890 (Tex.App.—Amarillo 1982, orig. proceeding) (exemplifying the difference between civil and criminal contempt). On the other hand, criminal contempt involves the levy of punishment for violating a prior order, thus affronting the dignity and authority of the court. *Ex parte Rogers*, 633 S.W.2d at 669. Such contempt is exemplified by a sentence ordering the individual to be incarcerated for a finite period, which period is unaffected by the individual's performance of any future act. *Id.* Since, the court at bar sentenced Scariati to jail for six months for not maintaining health insurance for his children and the sentence was not subject to being reduced upon his obtaining such insurance, Scariati was held in criminal contempt. That is, he was being punished for affronting the court by ignoring its previous declaration.

2. The principle underlying this rule is akin to one of jurisdictional ripeness. That is, we can-

not adjudicate hypothetical issues or render advisory opinions. *Camarena v. Texas Employment Comm'n*, 754 S.W.2d 149, 151 (Tex.1988). There must be a live controversy before us to trigger our jurisdiction. Until the punishment assessed for criminal contempt expires, there is no live controversy arising from the restrictions inherent in holding one in civil contempt. This is so because the individual found in civil contempt may perform the conditions imposed upon him prior to the expiration of his imprisonment for criminal contempt. In other words, the likelihood of continued restraint caused by the civil contempt remains hypothetical, *Ex parte Hogan*, 916 S.W.2d 82, 87 (Tex.App.—Houston [1st Dist.] 1996, orig. proceeding), and the need for such restraint is elemental to securing habeas relief. *See Ex parte Hughey*, 932 S.W.2d 308, 310–11 (Tex.App.—Tyler 1996, orig. proceeding) (refusing to issue a writ of habeas corpus since the petitioner was not subject to restraint). So, to address allegations involving civil contempt before the punishment assessed for criminal contempt expires would be tantamount to addressing a hypothetical situation or issuing an advisory opinion.

They may, however, be re-urged should he not perform the requirements of the Order prior to the expiration of his imprisonment for criminal contempt. *Id.* Accordingly, we deny that portion of Scariati's petition for habeas corpus under which he contends that the Order finding him in criminal contempt and punishing him for that contempt is void. Additionally, we 1) dismiss the remaining portions of his petition without prejudice, 2) revoke relator's bond, and 3) remand Scariati to the custody of the Potter County Sheriff to serve the remainder of his sentence for criminal contempt.