Petition
for Writ of Habeas Corpus Denied; Relator Remanded to Custody of Harris County
Sheriff; and Memorandum Opinion filed December 3, 2009.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00775-CV



In Re ROBERTO JOHN JOHNSON,
Relator



 



ORIGINAL PROCEEDING



WRIT OF HABEAS CORPUS



MEMORANDUM
 OPINION

This is a habeas corpus proceeding in which the relator
claims that a commitment order and underlying contempt order are void.  Pending
review, this court issued the writ and set bond, and relator posted bond and
was released from custody.  Finding no merit in the petition, we deny his
request for writ of habeas corpus, order his bond revoked, and remand him to
the custody of the Harris County Sheriff. 

I.                  
Factual And Procedural
Background

            Relator
Roberto John Johnson is currently obligated to pay child support in the amount
of $685.30 per month, and medical support in the amount of $60.00 per month. 
On October 31, 2008, the associate judge signed a proposed agreed order
enforcing the support obligation and revoking the order staying license
suspension (“contempt order”).  On November 3, 2008, the Honorable Judy Warne
adopted and signed the proposed contempt order.  In the contempt order, the
trial court found that relator was in arrears on child support in the amount of
$29,452.74 as of September 30, 2008, and ordered relator to pay the child
support arrearage as follows:  $3,138.80 on October 31, 2008; $4,100.00 on
February 19, 2009; and $454.70 in child support each month, in addition to the
current monthly $685.30 child support and $60.00 medical support obligations,
for a total monthly payment of $1,200.00, beginning on November 15, 2008.  The
court further found relator was in arrears on medical support in the amount of $361.20
as of September 30, 2008, and ordered relator to pay $361.20 in medical support
on October 31, 2008.  

            With
respect to punitive contempt, the trial court found relator guilty of four
separate acts of contempt for failure to pay child support, and guilty of four
separate acts of contempt for failure to pay medical support.  The trial court
sentenced relator to confinement in county jail for 180 days for each act of
contempt, with the sentences to run concurrently.  With regard to civil or coercive
contempt, the trial court ordered relator committed to the county jail until he
pays $5,000 in child support arrearages, $50 in attorney’s fees, and court
costs “as billed.”  

            The
trial court ordered relator to return to court on February 19, 2009, for
commitment to county jail.  However, the case was reset to September 3, 2009.  On
that date, the associate judge conducted a hearing and signed a proposed
commitment order.  The trial court signed the commitment order that same day. 
The September 3, 2009 commitment order states, in relevant part:

            On the 3 day of September, 2009, this cause
came before the Court pursuant to an Order of this Court dated the 30 day of
November, 2008.  In that Order, the Court found [relator], Obligor, in contempt
for failure to make court-ordered child support payments, committed the Obligor
to the county jail for 180 days for each separate act of contempt, said
commitments to run concurrently.  Additionally the Court committed the Obligor
to the county jail until Obligor pays:

            1.         $5,000.00 in child support
arrearages;

            2.         $50.00 in attorney fees; and

            3.         $ as billed [sic] in court costs.

            The Court finds that Obligor appeared before
the Court as ordered, and that there is no reason why said sentence should not
be imposed.  Therefore, IT IS ORDERED that the Sheriff arrest Obligor, and that
he be committed immediately to the county jail, according to the terms and
conditions specified in the above mentioned prior order.

            Relator
seeks habeas corpus relief, claiming that both the commitment order and the
underlying contempt order are void.  We issued the writ and set bond.  

II.              
Standard of Review

            The
purpose of a writ of habeas corpus is not to determine the guilt or innocence
of the contemnor, but to determine whether he was afforded due process of law
or if the order of contempt is void.  Ex parte Gordon, 584 S.W.2d 686,
688 (Tex. 1979) (orig. proceeding).  A writ of habeas corpus will be issued if
the order underlying the contempt is void, or if the contempt order itself is
void.  Ex parte Shaffer, 649 S.W.2d 300, 302 (Tex. 1983) (orig.
proceeding); Gordon, 584 S.W.2d at 688.  An order is void if it is
beyond the power of the court to enter it or if it deprives the relator of
liberty without due process of law.  In re Markowitz, 25 S.W.3d 1, 3
(Tex. App.—Houston [14th Dist.] 1998, orig. proceeding).  The relator bears the
burden of showing his entitlement to relief in a habeas corpus proceeding.  Ex
parte Occhipenti, 796 S.W.2d 805, 808 (Tex. App.—Houston [14th Dist.] 1990,
orig. proceeding).  In a habeas corpus proceeding, the order or judgment is
presumed to be valid, unless the contemnor discharges his burden to show
otherwise.  Id. at 809.  

III.           
Issues And Analysis 

            Relator seeks habeas corpus
relief claiming the underlying contempt order is void and therefore the court’s
commitment order cannot stand.

Discrepancy in Date of
Contempt Order

            Relator
argues that he has not been accorded due process because, while the commitment
order refers to a contempt order dated November 30, 2008, no such contempt
order exists.  A review of the record reflects that the contempt order on which
the commitment order is based is dated “November 3, 2008” rather than “November
30, 2008.”  Thus, there is a discrepancy in the date of the contempt order
referenced in the commitment order and the contempt order signed by the trial
court.  

            To
satisfy due process requirements, both a written judgment of contempt and a
written commitment order are necessary to imprison a person for constructive
contempt.  Ex parte Strickland, 723 S.W.2d 668, 669 (Tex. 1987) (orig.
proceeding) (per curiam); In re Markowitz, 25 S.W.3d at 3.[1] 
The purpose of the written commitment order is to enforce a contempt judgment
by directing imprisonment of the contemnor.  Ex parte Crawford, 684
S.W.2d 124, 128 (Tex. App.—Houston [14th Dist.] 1984, orig. proceeding).  The
commitment order is a warrant order of process by which a court directs an
officer to take a person to jail and detain him there.  Ex parte Hernandez,
827 S.W.2d 858, 858 (Tex. 1992) (orig. proceeding) (per curiam).  No particular
form is prescribed by the law for an order of commitment.  Id.  However,
the commitment order must tell the contemnor in clear, specific, and
unambiguous words how to gain release from contempt.  Ex parte Rosser,
899 S.W.2d 382, 387 (Tex. App.—Houston [14th Dist.] 1995, orig. proceeding).

            A
discrepancy between the date of the actual November 3, 2008 contempt order and
the date of the contempt order referenced in the commitment order as “30 day of
November, 2008” does not render the commitment order void.  “An obvious typographical
or clerical error does not void the commitment order if it can be determined
with sufficient clarity and certainty from the remainder of the order what the
alleged contumacious acts were and what the relator must do to purge himself of
contempt.”  Ex parte Hall, 611 S.W.2d 459, 460 (Tex. Civ. App.—Dallas
1980, orig. proceeding).  Texas courts have held similar discrepancies are not
sufficient to invalidate contempt or commitment orders.  See, e.g., Ex parte
Benitez, 590 S.W.2d at 707 (holding show cause order that incorrectly
referred to date of contempt order as May 7, rather than May 4, was not
invalid);[2]
Ex parte Aguilera, 768 S.W.2d 425, 427 (Tex. App.—El Paso 1989, orig.
proceeding) (upholding contempt order that found relator guilty of violations
of September 11, 1988 order, when date of order was September 7, 1988); Ex
parte Hall, 611 S.W.2d at 460–61 (upholding commitment order that found
relator had contemptuously disobeyed support order by failing to make payments
from April 13, 1979 to January 10, 1979, because order made it clear that
payments were to begin on April 13, 1979, and payments accrued as of January
10, 1980, rather than January 10, 1979).  We find the variance in the date,
under the circumstances of this case, does not render the commitment order
void.

            Relator
also claims the commitment order is confusing because there are “approximately
26 various post judgment orders,” including three orders that include
arrearages for child support.  Relator has not included any of these other
orders in the record.  See Tex. R. App. P. 52.7(a)(1).  Even so, the
misstatement of the date of the contempt order has not deprived relator of due
process.  Because relator agreed to the November 3, 2008 contempt order, he had
actual notice of it.  The contempt order gave relator actual notice of the acts
of contempt for which he was found guilty, his punishment, and what he must do
to purge the civil or coercive contempt.  The contempt order also contains a
commitment order directing relator to appear before the trial court on February
19, 2009.  The case, as relator acknowledges, was reset to September 3, 2009,
and he appeared at that hearing.  The September 3, 2009 commitment order contains
an accurate recitation of the punishment set forth in the November 3, 2008
contempt order.  Moreover, the writ of commitment refers to the contempt order
dated “11/3, 2008.”[3] 


Terms
of Compliance Required to Avoid Confinement

            Relator
further complains that in the contempt order the court failed to state what
compliance is required to completely avoid serving jail time.  Relator appears
to be complaining about the coercive or civil contempt portion of the order,
while ignoring the punitive or criminal contempt portion of the order, for
which there is no action relator can take to avoid serving jail time.[4] 
With respect to criminal contempt, relator was found guilty of four separate
acts of contempt for failure to pay child support and four separate acts of
contempt for failure to pay medical support, and sentenced to 180 days in jail
for each separate act, with the sentences to run concurrently.  The contempt
order does not contain any language making the imposition of the jail sentences
conditional on any action by relator.   In the contempt order the court sentenced
relator to unconditional jail time for criminal contempt, for which relator
cannot purge himself.  Furthermore, the November 3, 2008 contempt order
includes a commitment order, directing relator to appear in court on February
19, 2009, “to begin commitment to county jail,” but does not include any
conditions suspending relator’s commitment for criminal contempt.  Therefore,
even if the contempt order did not sufficiently inform relator of the terms for
avoiding serving jail time for civil contempt, he cannot avoid serving jail
time under the criminal contempt portion of that order.[5]  

 

Amount
of Support Paid by Relator Pursuant to Contempt Order

            Relator
claims that he “has paid all monies for which he was found in contempt.” 
Relator was found guilty of contempt for failing to make child support and
medical support payments on January 15, March 15, May 15, and June 15, 2008. 
Relator includes in his habeas record a payment history dated September 9, 2009,
a date after the September 3, 2009 hearing and order.  This document was not
before the trial court at the time the trial court signed the September 3 order,
and therefore we do not consider it.  See Schroeder v. Valdez, 941
S.W.2d 312, 314 (Tex. App.—Corpus Christi 1997, orig. proceeding).  However, even
if considered by this court, the payment history does not support relator’s position
because it does not show that relator made support payments on those dates for
which relator was found to be in contempt.  From the time of the November 3,
2008 contempt order until the September 3, 2009 hearing, relator should have
paid a total of $19,600.00 toward current obligations for child support and
medical support and the adjudicated arrearage—$1,200.00 total monthly
obligation for ten months, plus lump sums of $3,500.00 and $4,100.00.  The
payment history shows that, from the time of the November 3, 2008 contempt
order through April 20, 2009—the last date on which relator made any support
payment—relator had paid a total of $14,170.83, an amount that falls far short
of the $19,600.00 total required payments by the time of the September 3, 2009
hearing.  

            Moreover,
the trial court found no reason the sentence in the contempt order should not
be imposed.  Relator has not brought forward the reporter’s record of the
October 31, 2008 hearing at which relator was found to be in criminal contempt
for failure to make certain child support payments, nor has relator provided
the reporter’s record of the September 3, 2009 hearing, to show that the trial
court erred in finding that the criminal contempt punishment should be
imposed.  

Civil
Contempt

            Relator
argues that the civil or coercive contempt portion of the contempt order
requiring him to pay $5,000 became moot when he began to serve the jail
sentence because he has twice paid the $5,000 since November 2008.  Relator
also contends that the civil contempt portion of the order fails to specify
what compliance is required for him to avoid confinement.  Finally, relator asserts
that, if the commitment order includes a new order to pay $5,000, there is no
finding regarding his present ability to pay the additional $5,000.  

            The
combination of civil and criminal contempt provisions in a single order usually
results in a period of punitive confinement followed by civil confinement
limited by a purging provision.  Ex parte Durham, 921 S.W.2d at 488. 
The contemnor need not serve the sentence for civil contempt if he purges the
contempt while serving the criminal contempt sentence.  Id.  Therefore,
if the criminal contempt sentence is valid, a challenge to the validity of the
civil contempt portion of the order is premature until the criminal contempt sentence
has been served.  In re Parr, 199 S.W.3d 457, 462 (Tex. App.—Houston
[1st Dist.] 206, orig. proceeding).[6] 
Because the criminal contempt sentence is valid (as addressed above) and
relator has not served that sentence, it would be premature for this court to
address the validity of the civil contempt portion of the order.  See id. 
Therefore, we decline to do so.

Relator’s allegations regarding the civil contempt
portion of the contempt order may be reurged if he has not performed the
requirements of the order prior to the expiration of his confinement for
criminal contempt.  See In re Anascavage, 131 S.W.3d at 112; In re
Scariati, 988 S.W.2d at 274; Ex parte Occhipenti, 796 S.W.2d at 810.

IV.            
Conclusion

Relator’s petition for writ of habeas corpus is
denied, his bond is revoked, and he is ordered remanded to the custody of the
Sheriff of Harris County, Texas.  

 

 

                                                                                    

                                                                        /s/        Kem
Thompson Frost

                                                                                    Justice

 

 

Panel consists of Chief Justice Hedges and Justices Frost and
Brown.

 









[1] The
violation of a written court order is constructive contempt because it occurs
outside the presence of the court.  Ex parte Durham, 921 S.W.2d 482, 485
(Tex. App.—Corpus Christi 1996, orig. proceeding).  





[2] In Benitez,
the Supreme Court of Texas observed that criminal convictions have been
sustained notwithstanding greater variances in dates.  See Jackson v. State,
501 S.W.2d 660 (Tex. Crim. App. 1973) (affirming conviction where indictment
charged defendant with offense committed on August 29, 1972, even though proof
showed offense occurred on July 29, 1972); Washington v. State, 492
S.W.2d 473 (Tex. Crim. App. 1973) (affirming conviction when indictment stated
date of offense was on or about May 5, 1968, even though evidence showed that
it occurred on May 5, 1967).





[3] Relator
further argues, even if the date of contempt order were corrected in the
commitment order, he would have been jailed more than 48 hours on an illegal
order, violating due process.  The trial court may cause a contemnor to be
detained by the sheriff or other officer for a short and reasonable time while
the judgment of contempt and the order of commitment are being prepared for the
judge’s signature.  See ex parte Jordan, 865 S.W.2d 459 (Tex. 1993)
(orig. proceeding) (per curiam) (holding as void oral commitment order
pronounced on Friday and written commitment order was signed on following
Monday); Ex parte Amaya, 748 S.W.2d 224, 225 (Tex. 1988) (orig.
proceeding) (holding that three-day delay is not short and reasonable time
while documents are being prepared for signature).  Because the commitment
order is not void, we need not address this issue.  





[4] The
distinction between civil or coercive contempt and criminal contempt is based
on the nature and purpose of the penalty imposed.  Ex parte Johns, 807
S.W.2d 768, 770 (Tex. App.—Dallas 1991, orig. proceeding).  In a civil-contempt
proceeding, the court is attempting to coerce or persuade the contemnor to obey
a previous order.  Id.  A judgment providing that a contemnor is to be
committed unless and until he performs the affirmative act required by the
court’s order is a civil contempt order.  In re Mott, 137 S.W.3d 870,
875 (Tex. App.—Houston [1st Dist.] 2004, orig. proceeding).  When the contemnor
can avoid incarceration by obeying the court’s order, the contemnor is said to
“‘carr[y] the keys of [his] prison in [his] own pocket.’”  Ex parte Werblud,
536 S.W.2d 542, 545 (Tex. 1976) (orig. proceeding) (quoting Shillitani v.
U.S., 384 U.S. 364, 368 (1966)). 

The purpose of a criminal contempt order is to punish
for disobedience.  Ex parte Harrison, 741 S.W.2d 607, 609 (Tex.
App.—Dallas 1991, orig. proceeding).  Generally, the punishment for criminal
contempt is fixed and definite; no subsequent voluntary compliance on the part
of the contemnor can enable him to avoid punishment for his past acts.  Ex
parte Werblud, 536 S.W.2d at 546 (quoting Ex parte Hosken, 480
S.W.2d 18, 23 (Tex. Civ. App.—Beaumont 1972, orig. proceeding)).  The key
feature that distinguishes criminal contempt from civil or coercive contempt is
that the penalty for the former is unconditional.  Ex parte Johns, 807
S.W.2d at 771.  





[5] Relator’s
complaints regarding the civil-contempt portion of the contempt order are
addressed below.  





[6] The
principle underlying this rule is akin to jurisdictional ripeness.  In re
Scariati, 988 S.W.2d 270, 273 n.2 (Tex. App.—Amarillo 1998, orig.
proceeding).  Until the punishment assessed for criminal contempt expires,
there is no live controversy arising from the restrictions inherent in holding
one in civil contempt.  In re Anascavage, 131 S.W.3d 108, 112 (Tex.
App.—San Antonio 2004, orig. proceeding); In re Scariati, 988 S.W.2d at
273 n.2.  The contemnor may perform the conditions imposed upon him prior to
the expiration of his imprisonment for criminal contempt.  In re Scariati,
988 S.W.2d at 273 n.2.  That is, the likelihood of continued restraint caused by
the civil or coercive contempt remains hypothetical, and the requirement of
such restraint is elemental to securing habeas corpus relief.  Id.