# NO. 12-23-00148-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *EX PARTE:* | § | |
| *MATTHEW RUEBEN PHILLIPS,* | § | *ORIGINAL PROCEEDING* |
| *RELATOR* | § | |

## *MEMORANDUM OPINION*

Matthew Rueben Phillips filed a petition for writ of habeas corpus in which he alleges that he is being illegally detained in the Cherokee County jail.[1]  He alleges that the order revoking suspension of a probated contempt sentence violated his right to due process.  We grant the writ.

## BACKGROUND

Relator and Real Party in Interest Jessica Marie Phillips (Jessica) were previously married and share a child, S.P.  On March 21, 2022, Respondent issued Agreed Temporary Orders in which she ordered Relator to pay monthly child support to Jessica for S.P., and maintain health insurance for S.P. Respondent enjoined both parties from alienating any of the parties' property, separate or community, unless specifically authorized, and from signing or endorsing the other party's name on any negotiable instrument.  Relator was specifically enjoined from entering or remaining on the premises of the former marital home except by agreement.

On January 17, 2023, Jessica filed a combined Fourth Amended Motion for Enforcement of Temporary Orders and Motion to Compel, alleging multiple violations of the court's

---

[1] Respondent is the Honorable Janice Stone, Judge of the County Court at Law in Cherokee County, Texas.

Temporary Orders by Relator.[2] On January 20, Respondent held a hearing on the fourth amended enforcement motion,[3] at which Relator and Jessica both appeared with their respective counsel. Jessica and Relator approved the entry of an Agreed Order of Enforcement (the Agreed Order) stating that Relator failed to comply with the Temporary Orders by: (1) failing to timely make the ordered child support payments for September, October, November, and December 2022, (2) failing to make the ordered child support payment for January 2023, (3) failing to maintain health and dental insurance for S.P., (4) removing a horse trailer, as well as a Bobcat Toolcat utility work machine and its accompanying hay spear and bucket, from the marital residence and refusing to return same upon demand, (5) selling the horse trailer, (6) depositing the check from the sale of the horse trailer into an account to which Jessica had no access, and (7) accessing the former marital residence without agreement on May 27, 2022. Regarding the Motion to Compel, the parties further agreed on the record that Relator failed to provide complete responses and documents in response to production requests served upon him and agreed that Relator would produce documents responsive to the production requests on or before February 10, 2023.

Respondent entered the written Agreed Order on February 10 and found Relator in civil contempt for each of the violations of the Temporary Orders. Respondent imposed a sentence of confinement in the Cherokee County jail for 180 days or until Relator complied with certain of the court's orders, namely: (1) pay the January 2023 child support on or before January 23, (2) obtain a health and dental insurance policy covering S.P. and provide proof of such to Jessica on or before January 23, (3) post bond of $5,000.00 to secure the payment of monthly child support with the District Clerk of Cherokee County on or before February 1, (4) pay $8,027.00 in attorney's fees to Jessica's counsel on or before sixty days from the hearing, (5) timely pay the ordered monthly child support to Jessica going forward, and (6) comply with all other terms of the Temporary Orders. However, Respondent suspended Relator's sentence and placed Relator on 120 months of probation, conditioned upon Relator's compliance with the above orders as terms of said probation.

---

[2] Jessica filed her original Motion for Enforcement of Temporary Orders on July 19, 2022, the Amended Motion for Enforcement on October 5, 2022, the Second Amended Motion for Enforcement on October 17, 2022, and the Third Amended Motion for Enforcement on January 6, 2023.

[3] The January 20 hearing on the Fourth Amended Motion for Enforcement was the first hearing on any of Relator's alleged violations of the Temporary Orders.

On February 10, the same day Respondent entered the Agreed Order, Jessica moved to revoke the suspension of Relator's commitment, alleging that Relator did not make the January child support payment on or before January 23, obtain a health and dental insurance policy covering S.P. and provide proof thereof on or before January 23, or post the ordered $5,000.00 bond on or before February 1. Jessica filed an amended motion to revoke on April 6, adding allegations that Relator did not timely make the April 2023 child support payment, pay the $8,027.00 in attorney's fees to Jessica's counsel on or before sixty days from the hearing, or comply with the production requests on or before February 10.

On April 10, Respondent held a hearing on Jessica's motion to revoke, at which both parties appeared with counsel. Respondent found that Relator violated the terms of his suspended commitment and the order to comply with the production requests. However, as of the hearing date, Relator had already made the outstanding child support payments to Jessica, posted the ordered bond with the District Clerk of Cherokee County, and provided evidence of health insurance (though not dental insurance) for S.P. Relator paid the outstanding $8,027.00 in attorney's fees in open court. Respondent ordered Relator to comply with the outstanding production requests on or before April 17, and pay an additional $3,160.00 in attorney fees to Jessica's counsel as a condition of his suspended commitment. Respondent stated in her Order on Motion to Revoke, signed April 12, that she would take under advisement "any other punishment, sanctions, and the continued suspension of commitment under advisement" pending a review of Relator's further compliance with the court's orders. Finally, Respondent ordered that if Relator was late or delinquent in any other payments due under the orders, Jessica's counsel was authorized to file an affidavit setting forth the non-compliance and non-payment, along with a writ of commitment to revoke Relator's suspended commitment and incarcerate him for a period of six months.

On May 8, Respondent entered an order revoking Relator's suspension and ordering his commitment to the Cherokee County jail.[4] The order specified that Relator failed to comply with court's order of April 12, 2023, ordering him to provide documents responsive to the outstanding production requests by April 17. Relator was thereafter committed to custody of the Cherokee

---

[4] Relator's appendix does not contain any affidavit filed by Jessica's counsel alleging nonpayment or any other noncompliance with Respondent's orders. The "Docket Book Report" provided lists that Jessica filed a *proposed* writ of commitment and proposed capias on May 8, 2023, but these documents are not before us.

County jail. This petition followed. We granted Relator's motion for bond, ordering that he be released from commitment upon posting of a $10,000.00 cash bond.

## AVAILABILITY OF HABEAS CORPUS

Habeas corpus is available to review a contempt order entered by a lower court confining a contemnor. *Ex parte Gordon*, 584 S.W.2d 686, 687–88 (Tex. 1979) (orig. proceeding). The purpose of a habeas corpus proceeding is not to determine the ultimate guilt or innocence of the relator, but only to ascertain whether the relator has been unlawfully confined. *Id.* at 688; *In re Mann*, 162 S.W.3d 429, 432 (Tex. App.—Fort Worth 2005, orig. proceeding). A writ of habeas corpus will issue if the order underlying the contempt order is void or if the contempt order itself is void. *See Ex parte Shaffer*, 649 S.W.2d 300, 302 (Tex. 1983) (orig. proceeding). In a habeas corpus proceeding, the order or judgment being challenged is presumed to be valid. *In re R.E.D.*, 278 S.W.3d 850, 855 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding); *In re Turner*, 177 S.W.3d 284, 288 (Tex. App.—Houston [1st Dist.] 2005, orig. proceeding). The relator must show that the order is void and not merely voidable. *In re Munks*, 263 S.W.3d 270, 272–73 (Tex. App.—Houston [1st Dist.] 2007, orig. proceeding). A contempt order is void if it deprives the relator of liberty without due process of law or if it exceeded the power of the court to issue. *See In re Coppock*, 277 S.W.3d 417, 418 (Tex. 2009) (orig. proceeding).

## ORDER REVOKING SUSPENSION AND FOR COMMITMENT

Relator argues that the May 8, 2023, Order Revoking Suspension and for Commitment to County Jail is void because it violates his right to due process.

### Applicable Law

A trial court may enforce by contempt any provision of a temporary or final order in a suit affecting the parent-child relationship. TEX. FAM. CODE ANN. § 157.001 (West 2023). There are two forms of contempt: civil and criminal. A criminal contempt order is punitive in nature and is an exertion of the court's inherent power to punish a party for "some completed act which affronted the dignity and authority of the court." *Ex parte Johns*, 807 S.W.2d 768, 771 (Tex. App.—Dallas 1991, orig. proceeding) (quoting *Ex parte Werblud*, 536 S.W.2d 542, 545 (Tex. 1976)) (orig. proc.)). Criminal contempt orders generally require the individual to be incarcerated for a finite period and that period is unaffected by the individual's performance of

4

any future act. *In re Scariati*, 988 S.W.2d 270, 272 n.1 (Tex. App.—Amarillo 1998, orig. proceeding); *Ex parte Hosken*, 480 S.W.2d 18, 23 (Tex. Civ. App.—Beaumont 1972, orig. proceeding). In criminal contempt proceedings, the contemnor is being punished for his improper actions "and no subsequent voluntary compliance on the part of the defendant can enable him to avoid punishment for his past acts." *Ex parte Johns*, 807 S.W.2d at 771 (quoting *Ex parte Hosken*, 480 S.W.2d at 23). A judge can impose a fine or imprisonment or both in a criminal contempt order. *Id.* The distinguishing feature of criminal contempt is that the penalty is unconditional. *Id.*

Texas courts have consistently held that contemnors whose alleged contemptuous behavior occurred outside of court are entitled to procedural due process protections before they may be held in contempt. *In re Zandi*, 270 S.W.3d 76, 77 (Tex. 2008). There is no meaningful distinction between an individual's rights which are at stake in a constructive criminal contempt hearing and those at stake in an ordinary criminal trial where confinement is a possible penal sanction. *Id.* Due process of law requires that the constructive contemnor be given full and complete notification and a reasonable opportunity to "meet the charges by way of defense or explanation." *Id.* (citing *Gordon*, 584 S.W.2d at 688). Moreover, when a person has been held in contempt for violation of the court's order, but his punishment is suspended on condition of compliance, the court must afford him a subsequent hearing to determine breach of the condition and must issue an unconditional order of commitment. *Ex parte Wilson*, 797 S.W.2d 6, 7 (Tex. 1990); *In re Matney*, 24 S.W.3d 481, 483 (Tex. App.—Houston [1st Dist.] 2000, orig. proceeding). "A contemnor's post-contempt conduct cannot be used to subject him to additional punishment." *Ex parte Swate*, 922 S.W.2d 122, 124 (Tex. 1996).

**Analysis**

Although we are mindful of Relator's many instances of noncompliant behavior and Respondent's understandable frustration with said behavior, we observe several procedural errors related to the revocation of Relator's suspension of commitment that ultimately deprived Relator of liberty without due process of law.

First, although the Agreed Order, Order on Motion to Revoke, and Order Revoking Suspension each contain findings that Relator failed to timely produce responsive documents to Jessica, the record before us lacks any written order explicitly finding Relator in contempt for his discovery-related noncompliance. In the Agreed Order, Respondent found Relator in contempt

of court for violations of the Temporary Orders and sentenced him to the shorter of 180 days' imprisonment or imprisonment until he complied with certain of the court's orders. Respondent then suspended Relator's commitment to jail entirely, conditioned on his compliance with those same orders. The Order on Motion to Revoke contains no additional findings of contempt. Due process requires a court, before imprisoning a person for violating an earlier order, to sign a written judgment or order of contempt and a written commitment order. *Ex parte Strickland*, 723 S.W.2d 668, 669 (Tex. 1987). This requirement applies to both civil and criminal constructive contempt orders. *Id.*; *In re Broughton*, No. 09-09-00550-CV, 2009 WL 5276756, at \*1 (Tex. App.—Beaumont Jan. 14, 2010, orig. proceeding) (mem. op.). Without a written judgment explicitly finding Relator in contempt for his noncompliance with a specific discovery order, Relator's imprisonment violates his right to due process.

Second, the Order Revoking Suspension states that Relator "failed to comply with the terms and conditions of the order of this Court suspending commitment signed on April 12, 2023."[5] This order purports to rescind suspension of Relator's sentence solely because of his noncompliance with orders that he produce responsive documents by a date certain. But Relator's compliance with the discovery orders was not a condition of his suspension. The Agreed Order conditions the suspension of Relator's sentence on his compliance with six separate terms, none of which relate to document production. The Order on Motion to Revoke sets one additional term for the suspension, namely that Relator timely pay additional attorney's fees to Jessica's counsel. Although both documents compel Relator to provide the delinquent discovery materials to Jessica by a certain date, neither order sets compliance with the discovery order as a condition of Relator's suspension of commitment. Consequently, Relator's nonperformance thereof was an improper basis on which to revoke the suspension of his jail sentence, and revocation on said basis violated his right to due process. *See, e.g.*, *Hille v. State*, No. 13-11-00755-CR, 2012 WL 6719452, at \*3 (Tex. App.—Corpus Christi Aug. 28, 2012, no pet.) (mem. op.) (court not authorized to revoke probation without showing that probationer violated a condition of probation imposed by court) (citing *DeGay v. State*, 741 S.W.2d 445, 449

---

[5] The Order on Motion to Revoke entered on April 12 does not appear to enact any additional suspension of commitment, but only takes revocation under advisement "pending a review of [Relator's] further compliance with all previous orders of this Court." The only order on record that suspends commitment is the Agreed Order entered February 10.

6

(Tex. Crim. App. 1987)); *see also* **Zandi**, 270 S.W.3d at 77 (where confinement is a possible sanction, contemnors afforded same procedural due process rights as criminal defendants).

Third, even presuming the Order Revoking Suspension included a proper basis to revoke Relator's suspended sentence for contempt as set forth in the Agreed Order (as this is the only suspended sentence that could be subject to revocation), the sentence ordered is itself erroneous. The sentence originally imposed and suspended via the Agreed Order was civil in nature, because Relator could avoid or end his 180-day incarceration by obeying the court's orders. **In re Montgomery**, 138 S.W.3d 569, 572 (Tex. App.—Beaumont 2004, orig. proceeding). The sentence set by the Order Revoking Suspension is criminal in nature because it affords no opportunity for Relator to purge himself of the contempt and avoid his 180-day imprisonment. *See* **Scariati**, 988 S.W.2d at 272 n.1. In criminal proceedings, upon revocation of probation, a trial court may impose the suspended sentence or a lesser sentence but is without authority to impose a greater sentence. **Warren v. State**, No. 12-09-00325-CR, 2010 WL 3440439, at *4 (Tex. App.—Tyler Sept. 1, 2010, no pet.) (mem. op.) (citing **Kimball v. State**, 119 S.W.3d 463, 465 (Tex. App.—Beaumont 2003, no pet.)). Because contempt proceedings are quasi-criminal in nature, Texas law holds that such proceedings should "conform as nearly as practicable to those in criminal cases." **Ex parte Balderas**, 804 S.W.2d 261, 263 (Tex. App.—Houston [1st Dist.] 1991, orig. proceeding) (citing **Ex parte Sanchez**, 703 S.W.2d 955, 957 (Tex. 1986) (when the trial court revokes probation of sentence for contempt, court may impose punishment no greater than was originally assessed)). Though the length of Relator's punishment as set in the Agreed Order and in the Order Revoking Suspension is identical, the sentence in the Order Revoking Suspension is more severe because it does not afford Relator any opportunity to purge himself and avoid, or obtain an earlier release from, confinement. "By imposing other punishment, the trial court undertook to readjudicate punishment it had previously assessed—and probated." **Id**. However, we note that this error *alone* does not entitle Relator to release, as he must show that either the order of commitment or underlying order was void, rather than merely erroneous. **Id.**; **Ex parte Frazier**, No. C14-92-00969-CV, 1992 WL 388133, at *3 (Tex. App.—Houston [14th Dist.] Dec. 31, 1992, orig. proceeding) (mem. op.) (reforming commitment order to reflect punishment imposed in original contempt order).

Fourth, the Order on Motion to Revoke, cited by Respondent in the Order Revoking Suspension, is itself void because it states that the suspension of Relator's sentence may be

revoked based solely on an affidavit. The order provides that if Relator is late or delinquent in any further payments due under the court's orders, Jessica's counsel need only file an affidavit detailing the noncompliance, along with a writ of commitment,[6] after which Relator would be "jailed without a hearing."[7] Although it is unclear whether Jessica's counsel ever submitted such a notice, an order providing for such a procedure is void under Texas law. *See Matney*, 24 S.W.3d at 483; *Ex parte Hart*, 520 S.W.2d 952, 953–54 (Tex. Civ. App.—Dallas 1975, orig. proceeding). The relator in *Hart* was held in contempt for disobeying the court's previous order to pay child support; the court sentenced him to 180 days' imprisonment but suspended the sentence conditioned upon his making certain weekly payments. *Hart*, 520 S.W.2d at 953. The trial court also ordered that upon an affidavit of nonpayment from the relator's ex-wife, "all commitments, writs . . . and other process necessary for the enforcement of this order" would issue "without any further notice to [the relator]." *Id.* In holding that an order permitting commitment to occur on affidavit is "patently void" and violates due process, the court opined that such an order

> …sanctions imprisonment without providing relator an opportunity to present to the court his reasons for failing to pay the support ordered. Conceivably, [the relator] could have been confined even if [the] affidavit was false. We cannot approve such procedures.

*Id.* (citing *Ex parte Hodge*, 389 S.W.2d 463 (Tex. 1965)).

Finally, and perhaps most importantly, Respondent erred by not holding a hearing before issuing the Order Revoking Suspension. Respondent found therein that Relator did not comply with the provision in the Order on Motion to Revoke requiring him to produce responsive documents by April 17. However, Respondent was required to hold a hearing to determine whether a breach of the conditions of suspension occurred before revoking the suspension and ordering Relator's incarceration. *See Matney*, 24 S.W.3d at 483. The accused must be given the opportunity to present evidence concerning any defenses he may have or must knowingly waive that right. *Ex parte Woodyard*, 952 S.W.2d 104, 107 (Tex. App.—San Antonio 1997, orig. proceeding). Respondent's failure to permit Relator this opportunity constituted a breach of

---

[6] Respondent agreed on the record that "another event of noncompliance" would trigger counsel's authority to file a Notice of Noncompliance, but the written order is more narrowly written.

[7] Respondent agreed to this phrasing at the April hearing, although the written order does not explicitly contain this language.

Relator's due process rights. *See **Matney***, 24 S.W.3d at 483 ("A person's due process rights are violated when his incarceration has been made contingent on a particular event and that person is later incarcerated without a hearing to determine if that event has occurred.").

For the above reasons, we conclude that Relator was deprived of his due process rights in the underlying proceeding and is entitled to habeas relief.[8]

## DISPOSITION

Having examined and fully considered the petition for writ of habeas corpus, we conclude that Relator met his burden to obtain relief. Accordingly, we ***grant*** Relator's petition for writ of habeas corpus, ***order*** him released from the bond set by this Court on June 6, 2023, and ***order*** him released from confinement.

**BRIAN HOYLE**
Justice

Opinion delivered July 21, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

---

[8] Because we so conclude, we need not address Relator's remaining arguments. *See* TEX. R. APP. P. 47.1.

9



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 21, 2023**

**NO. 12-23-00148-CV**

**MATTHEW RUEBEN PHILLIPS,**
Relator
V.

**HON. JANICE STONE**,
Respondent

Appeal from the County Court at Law

of Cherokee County, Texas (Tr.Ct.No. FM2100424)

ON THIS DAY came to be heard the petition for writ of habeas corpus filed by Matthew Rueben Phillips; who is the relator in appellate cause no. 12-23-00148-CV and a party to trial court cause no. FM2100424, pending on the docket of the County Court at Law of Cherokee County, Texas. Said petition for writ of habeas corpus having been filed herein on June 5, 2023, and the same having been duly considered, it is the opinion of this Court that Relator's petition for writ of habeas corpus shall be **granted.**

It is therefore CONSIDERED, ADJUDGED and ORDERED that the said petition for writ of habeas corpus be, and the same is, hereby **granted**, that Relator is forthwith **released**

from the bond set by this Court on June 6, 2023, that Respondent will act promptly and **vacate** her order of May 8, 2023, and that Relator be **released** from confinement**.**

> Brian Hoyle, Justice.
> *Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*